IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **VENTURA COASTAL, LLC,**<br><br>                    Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>                    Defendant,<br><br>      and,<br><br>**LOUIS DREYFUS COMPANY SUCOS S.A.,**<br><br>                    Defendant-Intervenor. | Before:   Hon. Claire R. Kelly,<br>                Judge<br><br>Court No. 23-00009<br><br>PUBLIC VERSION |

**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING SUBSEQUENT AUTHORITY**

Daniel B. Pickard, Esq.
Claire M. Webster, Esq.

**B**UCHANAN **I**NGERSOLL **& R**OONEY **PC**
1700 K Street, NW
Washington, D.C. 20006
(202) 438-0070

*Counsel to Ventura Coastal, LLC*

Dated: August 13, 2024

## TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT ......................................... 1

II.  LEGAL BACKGROUND ................................................................................................ 2

III. ARGUMENT ..................................................................................................................... 3

IV.  CONCLUSION ................................................................................................................. 9

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allegheny Ludlum Corp. v. United States*,
    112 F. Supp. 2d 1141 (Ct. Int'l Trade 2000) ............................................................... 6

*Batterton v. Francis*,
    432 U.S. 416 (1977) ...................................................................................................... 4

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837
    (1984) ...................................................................................................................... 2, 8

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v.
    United States*,
    66 F.4th 968 (Fed. Cir. 2023) ...................................................................................... 2

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024) ........................................................................................ *passim*

*Michigan v. EPA*,
    576 U.S. 743 ................................................................................................................. 4

*Suzano S.A. v. United States*,
    589 F. Supp. 3d 1225 (Ct. Int'l Trade 2022) ............................................................... 6

**Statutes**

19 C.F.R. § 351.102(b)(3) ................................................................................................ 3, 7

19 U.S.C. §1677(33) ...................................................................................................... 1, 7, 9

19 U.S.C. § 1677(33)(C) .................................................................................................. 1, 5

19 U.S.C. §1677(33), subsections (C) and (G) ................................................................. 2

19 U.S.C. § 1977(33)(G) .................................................................................................... 8

19 U.S.C. § 3513(a)(2) ....................................................................................................... 5

H.R. 5110, H.R. Doc. No. 316, Vol. 1, 103d Cong., 2d Sess. (1994), reprinted in
    1994 U.S.C.C.A.N. 4175 ........................................................................................... 1, 6

**Other Authorities**

Black's Law Dictionary, 2d. Ed., thelawdictionary.com,
    https://thelawdictionary.org/partner ........................................................................ 6

Merriam-Webster.com (2023), https://www.merriam-webster.com ..............................................6

I.    **INTRODUCTION AND SUMMARY OF THE ARGUMENT**

Ventura Coastal LLC ("Ventura" or "Plaintiff") respectfully submits this Supplemental Brief in response to the Court's Order of July 8, 2024, regarding whether the Department of Commerce ("Commerce") has the "authority to give meaning" to the terms of 19 U.S.C. §1677(33). ECF No. 70. While Commerce has the authority to issue regulations to implement the statute, it does not have the "authority to give meaning" to the terms of this statute. While Congress has delegated some rulemaking authority to an agency, as it did to Commerce under the Uruguay Round Agreements Act ("URAA"), that does not endow Commerce with the authority to give meaning to the terms of the URAA. Accordingly, the Court should employ its own interpretation of the terms of the URAA.

Specifically, as to this matter, the Court should provide the agency no deference in regard to its unreasonable interpretation of the terms "partners" and "close supplier relationship" under the statute. The relevant statutory provision is 19 U.S.C. § 1677(33)(C), which defines "Partners" as "affiliates" or "affiliated persons." To give meaning to this text, courts typically seek to determine the statute's "natural reading" or "ordinary meaning." Commerce has narrowed the term to mean only those who own something in common or engage in a joint selling activity – without reference to any legal authority. As discussed further below, as Commerce adopted a definition that is unreasonably narrow and unsupportable, this decision cannot withstand judicial review. Additionally, the SAA defines a "close {supplier} relationship" as a relationship where "the supplier or buyer becomes reliant upon the other." H.R. 5110, H.R. Doc. No. 316, Vol. 1, 103d Cong., 2d Sess., at 838 (1994), reprinted in 1994 U.S.C.C.A.N. 4175. There is significant record evidence of this partnership. LDC was legally prohibited from owning or leasing land to grow lemons and could only do so through its partnership with its supplier. *See* LDC's Response Brief at 20, ECF No. 32. As also discussed below, Commerce has interpreted this provision

1

inconsistently with the statute, and whether under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ("Chevron") or per the recent decision of the Supreme Court in *Loper Bright Enterprises v. Raimondo*, 602 U.S. __, Slip Op. 22-451 (June 28, 2024) ("Loper Bright"), this matter should be remanded back to the agency for additional consideration.

## II.   LEGAL BACKGROUND

On June 28, 2024, the Supreme Court issued its opinion in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). In that case, the Court explicitly overruled the longstanding *Chevron* doctrine, which gave deference to administrative agencies' interpretation of statutes. *Id.* at 2273. Chief Justice Roberts' opinion stated:

> Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.

*Id.* The Court of Appeals for the Federal Circuit also issued an opinion last year in *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 66 F.4th 968, 977 (Fed. Cir. 2023) ("*COALITION*"). The Federal Circuit in *COALITION* empowered Commerce to adopt "such regulations as may be necessary to ensure that any provision of {the URAA}, or amendment made by {the URAA}, that takes effect on the date any of the Uruguay Round Agreements enters into force with respect to the United States is appropriately implemented on such date." *Id.* at 977.

At issue in the instant case is whether, under these developments in caselaw, this Court should adopt the Department of Commerce's interpretation of 19 U.S.C. §1677(33), subsections (C) and (G). The text of this statute is reproduced below for the Court's convenience:

(33) Affiliated persons

2

The following persons shall be considered to be "affiliated" or "affiliated persons":

(A) Members of a family, including brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants.

(B) Any officer or director of an organization and such organization.

(C) Partners.

(D) Employer and employee.

(E) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization.

(F) Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.

(G) Any person who controls any other person and such other person.

For purposes of this paragraph, a person shall be considered to control another person if the person is legally or operationally in a position to exercise restraint or direction over the other person.

19 C.F.R. section 351.102(b)(3) also defines affiliated persons as having the same meaning as the aforementioned statute. That statute states that, "In determining whether control over another person exists . . . {Commerce} shall consider the following factors, among others: Corporate or family groupings; franchise or joint venture agreements; debt financing; and close supplier relationships." 19 C.F.R. § 351.102(b)(3).

## III.    ARGUMENT

The Court in *Loper Bright* distinguished between different ways that Congress may enact statutes authorizing an agency to "exercise a degree of discretion." 144 S. Ct. at 2263. It pointed to examples drawn from past Supreme Court cases: including to statutes that expressly delegate to an agency the "authority to give meaning" to a statutory term, and to statutes regulating "subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,' such as 'appropriate' or 'reasonable.'" *Id.* (internal citations omitted).

3

The statutes at issue in these exemplary cases are instructive. The former case, in which an agency was delegated the "authority to give meaning" to a statutory term, involved a statute contained in the Social Security Act's Title IV, which concerned Aid to Families with Dependent Children. That statute provided that participating States were required to "provide assistance where a needy child 'has been deprived of parental support or care by reason of the unemployment (as determined in accordance with standards prescribed by the Secretary {of Health, Education, and Welfare}) . . . ." *Batterton v. Francis*, 432 U.S. 416, 419 (1977), *quoting* 42 U.S.C.A. § 607(a) (1968). This is a clear example of broad discretion delegated to an agency by Congress, legislating that independent standards prescribed by the secretary of an agency were a basis for the agency's statutory interpretation.

The latter case, in which an agency was empowered to regulate with appropriate or reasonable flexibility, involved a provision of the Clean Air Act, which directed the Environmental Protection Agency to regulate power plant emissions when "appropriate and necessary." *Michigan v. EPA*, 576 U.S. 743, 748, *quoting* 42 U.S.C. § 7412. The Court noted that, although the phrase "appropriate and necessary" provided the agency with flexibility, the agency may not "entirely fail to consider an important aspect of the problem." *Id.* at 752, *quoting Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

While these examples of types of statutes are not exhaustive methods of Congressional delegation to agencies, the URAA is more like the Clean Air Act provision at issue in *Michigan* than the Social Security Act provision at issue in *Batterton*. The URAA's delegation of authority to Commerce to enact regulations implementing that statute does not provide Commerce with unfettered jurisdiction over the meaning of that statute. Indeed, the URAA stipulates that Commerce may implement such regulations as necessary for the statute to be "appropriately

implemented." 19 U.S.C. § 3513(a)(2). That is, the statute is phrased to delegate regulatory authority to Commerce, but it does not delegate to Commerce the broader "authority to give meaning" to the terms of the statute.

In *Loper Bright*, the Court underscored that, "When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." 144 S. Ct. at 2263. Here, the will of Congress was to give Commerce authority to implement regulations pursuant to the statute.

It is in this context, then, that this Court should interpret statute defining affiliated persons. In the underlying investigation, Commerce found that Louis Dreyfus Company Sucos S.A. ("LDC") and its supplier were not affiliated, because "neither was reliant on the other." *See* Defendant's Response Brief at 16, ECF No. 33. In its brief before this Court, Commerce claimed that it relied on its implementing regulation in determining that "there was nothing in the contract or elsewhere on the record, indicating that the relationship between the two parties went beyond that defined by the contract." *Id.* at 21. The Government claims that, "Although certain specific contractual provisions were not explicitly discussed in the final determination, Commerce's decisional path was reasonably discernible." *Id.* at 22.

As these issues have previously been fully briefed, the Plaintiff will not repeat the entirety of its arguments here. However, we do emphasize a few important points regarding interpretation of the terms "partners" and "close supplier relationship" under the statute. The relevant statutory provision is 19 U.S.C. § 1677(33)(C), which defines "Partners" as "affiliates" or "affiliated persons." To give meaning to this text, courts typically seek to determine the statute's "natural reading" or "ordinary meaning." To do so, "it is appropriate to consult dictionaries." Black's Law

5

Dictionary defines a "partner" as "{a} member of a copartnership or firm; one who has united with others to form a partnership in business." Black's Law Dictionary, 2d. Ed., thelawdictionary.com, https://thelawdictionary.org/partner. The Merriam-Webster Dictionary defines "partner" as "one associated with another especially in action" and "a member of a partnership especially in business. Merriam-Webster.com (2023), https://www.merriam-webster.com.

Thus, a plain reading of the statute indicates that the defining feature of the relevant relationship (*i.e.*, partners) is their common relation to a partnership. Furthermore, nothing in the statute suggests that Congress did not intend for Commerce to apply the ordinary meaning of the term "partners."

Additionally, the SAA defines a "close {supplier} relationship" as a relationship where "the supplier or buyer becomes reliant upon the other." H.R. 5110, H.R. Doc. No. 316, Vol. 1, 103d Cong., 2d Sess., at 838 (1994), reprinted in 1994 U.S.C.C.A.N. 4175.

There is significant record evidence of this partnership. LDC was legally prohibited from owning or leasing land to grow lemons and could only do so through its partnership with its supplier. *See* LDC's Response Brief at 20, ECF No. 32. The Court has held that "Commerce is obligated to consider anything in the record that reasonably detracts from the substantiality of the evidence supporting its determination." *Suzano S.A. v. United States*, 589 F. Supp. 3d 1225, 1234 (Ct. Int'l Trade 2022); *see also Allegheny Ludlum Corp. v. United States*, 112 F. Supp. 2d 1141, 1165 (Ct. Int'l Trade 2000) ("Commerce's total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders {its} determination unsupported by substantial evidence."). Brazilian law prohibits foreign-controlled entities from owning or entering into a long-term leasehold for agricultural property. In essence,

6

the record demonstrated that LDC is unable to obtain a real interest in property in Brazil and is therefore reliant on its supplier for access to the farmland it uses to produce fruit juice.

*Loper Bright* makes clear that "Courts exercising independent judgment in determining the meaning of statutory provisions, consistent with the APA, may – as they have from the start – seek aid from the interpretations of those responsible for implementing particular statutes." 144 S. Ct. at 2247.  If, in interpreting the definition of affiliation in 19 U.S.C. § 1677(33), the Court relied on Commerce's implementing regulations, it should still reasonably find that affiliation exists between LDC Sucos and its supplier. Importantly, the regulation states that Commerce will consider a list of enumerated factors, "among others." 19 C.F.R. § 351.102(b)(3).  By definition, then, Commerce should have considered other relevant factors in determining whether LDC Sucos and its supplier are affiliated, including evidence of joint ownership and/or joint selling activities demonstrating that the parties were "partners" to be affiliated under (33)(C), or whether its decision was based on an absence of joint ownership, joint selling activities, or both. Put simply, Congress has spoken clearly that "partnership" is sufficient for affiliation between partners. In the present case, Commerce has narrowed the term to mean only those who own something in common or engage in a joint selling activity – without reference to any legal authority.

*Loper Bright* changes the underlying landscape of administrative law, and further supports Plaintiff's arguments here.  Even if the Court defers to Commerce's interpretation of the statute, it cannot uphold Commerce's failure to review the entirety of the record and failure to provide a reasoned explanation for its determination. Commerce dedicated, at most, one generally-worded sentence to convey its sweeping conclusion: "contractual terms between LDC and its supplier recognize the sovereignty of the parties and indicate no obligation toward each other beyond those spelled out by the terms of the contract." *See* I&D Memo at 12, P.R. 294. Commerce cited to

LDC's Section D questionnaire response at Exhibit D3 (*i.e.*, [

]), without any further commentary or explanation, as self-evident documentary support. In effect, Commerce determined that neither party had the ability to control the other without ever analyzing, much less addressing, the nature and extent of LDC's control over its supplier under the terms of their agricultural partnership. *See generally* I&D Memo at 12, P.R. 294.

Not only was this analysis contrary to the plain language and clear intent of the statute, see 19 U.S.C. § 1977(33)(G) (emphasis added) (defining affiliated parties as "{a}ny person who controls any other person and such other person"), but it was also inconsistent with Commerce's practice of finding that control can exist by virtue of either "the supplier or buyer becom{ing} reliant upon the other." I&D Memo at 12, n.71, P.R. 294. Yet Commerce provides no explanation for why it deviated from its practice. *See* I&D Memo at 12, P.R. 294. Accordingly, Commerce's affiliation determination was contrary to law because Commerce failed to analyze the supplier's reliance on LDC—and, thus, LDC's control of the supplier—in evaluating their close supplier relationship under Section 771(33)(G) of the Act.

In short, a remand would be appropriate even under *Chevron* doctrine as the agency's analysis did not consider evidence on the record of partnership regarding reliance and conflicts with statute. *Loper Bright* confirms that the role of the reviewing court under the APA is to independently interpret the statute and effectuate the will of Congress subject to constitutional limits. 144 S. Ct. at 2263. As Commerce's decision as to both the interpretation and application of "partners" and a close supplier relationship frustrates that purpose of the statute, it is respectfully submitted that a remand is appropriate under *Chevron* doctrine. Further, it is respectfully submitted

8

that in light of *Loper Bright,* the court does not owe the agency deference as to the interpretation of the statute, the case for a remand is even stronger.

## IV. CONCLUSION

For the foregoing reasons, we respectfully request that the Court employ a reasonable interpretation of 19 U.S.C. § 1677(33), consistent with the Supreme Court's opinion in *Loper Bright,* and find that LDC Sucos and its supplier are affiliated. Accordingly, this matter should be remanded back to the agency for further consideration.

Respectfully submitted,

/s/ Daniel B. Pickard, Esq.
Daniel B. Pickard, Esq.
Claire M. Webster, Esq.

**BUCHANAN INGERSOLL & ROONEY PC**
1700 K Street, NW
Washington, D.C. 20006
Telephone: 202.452.7936
Email: daniel.pickard@bipc.com

*Counsel for Ventura Coastal, LLC*