**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| VENTURA COASTAL, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>and<br><br>LOUIS DREYFUS COMPANY SUCOS S.A.,<br><br>        Defendant-Intervenor. | Court No. 23-00009<br><br>**NON-CONFIDENTIAL VERSION**<br><br>Confidential Information has been deleted from pages 1-2, 8 and 11. |

**DEFENDANT-INTERVENOR'S SUPPLEMENTAL BRIEF REGARDING NOTICE OF SUPPLEMENTAL AUTHORITY**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. LEGAL BACKGROUND .................................................................................................... 3

    1. *Loper Bright Enterprises v. Gina Raimondo* ..................................................... 3

    2. *Commission Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States* ................................................................................ 5

III. ARGUMENT ........................................................................................................................ 6

    A. Congress Delegated the Authority to Give Meaning to the Terms of 19 U.S.C. § 1677(33) to Commerce .......................................................................................... 6

    B. Commerce's Interpretation Is Especially Useful Guidance for the Court if It Decides to Independently Interpret the Statute ..................................................... 8

    C. Commerce's Interpretation of 19 U.S.C. § 1677(33) Is Best ............................. 10

IV. CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*,
    102. F.4th 1252 (Fed. Cir. 2024)...........................................................................9

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984).................................................................................................3

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*,
    66 F.4th 968 (Fed. Cir. 2023) ....................................................................... passim

*Gray v. Powell*,
    314 U.S. 402 (1941)...............................................................................................9

*Loper Bright Enters. v. Raimondo*,
    144 S. Ct. 2244 (2024)................................................................................. passim

*NLRB v. Hearst Publications, Inc.*,
    322 U.S. 111 (1994)...............................................................................................9

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)...............................................................................2, 3, 5, 8

*Ta Chen Stainless Steel Pipe v. United States*,
    1999 Ct. Intl. Trade LEXIS 110 (Oct. 28, 1999) ............................................... 10

*TIJID, Inc. v. United States*,
    366 F. Supp. 2d 1286 (Ct. Int'l Trade 2005) .....................................................10

*United States v. Am. Trucking Ass'ns*,
    310 U.S. 534 (1940).................................................................................................5

## STATUTES AND REGULATIONS

5 U.S.C. § 706............................................................................................................4

19 U.S.C § 1677(33) ...................................................................................... passim

19 U.S.C. § 1677(33)(C) ............................................................................... passim

19 U.S.C. § 1677(33)(G)................................................................................ passim

19 U.S.C. § 3512(d) ...........................................................................................11, 12

19 U.S.C. § 3513(a) ....................................................................................................6

19 U.S.C. § 3513(a)(2) ................................................................................................... 5, 7

19 C.F.R. § 351.102(b)(3) ............................................................................................. passim

## LEGISLATIVE MATERIALS

Statement of Administrative Action,
 H.R. Doc. No. 103-316, vol. 1 (1994) ..................................................................... passim

## ADMINISTRATIVE DETERMINATIONS

*Certain Lemon Juice from Brazil: Final Affirmative Determination of Sales at Less Than Fair Value*,
 87 Fed. Reg. 78939 (Dec. 23, 2022),
 and accompanying Issues and Decision Memorandum ............................................ passim

I.  **INTRODUCTION**

Pursuant to this Court's Order of July 8, 2024, Defendant-Intervenor Louis Dreyfus Company Sucos S.A. ("LDC Sucos") files this Supplemental Brief to address the applicability to this case of the U.S. Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), and the U.S. Court of Appeals for the Federal Circuit's ("CAFC") decision in *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 66 F.4th 968, 977 (Fed. Cir. 2023) ("*COALITION*"). *See* Order, ECF 70 (July 8, 2024).

The Court's instruction arises because the Department of Commerce's ("Commerce") final determination in this case included Commerce's application of Section 771(33) of the Tariff Act of 1930 ("the Act"), which defines "Affiliated persons." *See* 19 U.S.C § 1677(33); *Certain Lemon Juice from Brazil: Final Affirmative Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 78939 (Dec. 23, 2022) (PR 301) and accompanying Issues and Decision Memo (Dec. 19, 2022) (PR 294) ("*Final IDM*"). Under 19 U.S.C § 1677(33): "*The following persons shall be considered to be "affiliated" or "affiliated persons": . . . (C) Partners. . . . (G) Any person who controls any other person and such other person. For purposes of this paragraph, a person shall be considered to control another person if the person is legally or operationally in a position to exercise restraint or direction over the other person.*" 19 U.S.C. § 1677(33)(C) & (G).

During the investigation, LDC Sucos reported that it had a contractual relationship with [          ] whereby [

                                                                                                    ]

*See* LDC Sucos's Response to Commerce's Supplemental Section A Questionnaire (Apr. 8, 2022) at Supp. A-5 (PR 114) (CR 94) ("SAQR"); LDC Sucos's Response to Section D of the Antidumping Duty Questionnaire (Apr. 11, 2022) at Exhibit D3 ("DQR") (PR 116) (CR 104). In

1

its final determination, Commerce applied 19 U.S.C. § 1677(33)(C) and (G) and determined that LDC Sucos was not affiliated with [    ] under either provision. Specifically, Commerce determined that LDC Sucos was not affiliated with [    ] as "partners" under §1677(33)(C) because "LDC and its supplier do not jointly own anything pursuant to the terms of their contract and do not engage in joint selling activities." *Final IDM* at 13. Further, Commerce determined that LDC Sucos and [    ] were not affiliated under §1677(33)(G) as parties controlled by one another because the "contractual terms between LDC and its supplier . . . recognize the sovereignty of the parties and indicate no obligation toward each other beyond those spelled out by the terms of the contract." *Final IDM* at 12.

*Loper Bright* should not alter the outcome of the Court's analysis in this case for the following reasons. First, *Loper Bright* instructs the Court to "fix" the boundaries of an agency's statutory interpretation whenever Congress has delegated such authority to an agency – not to interpret the statute itself. In this case, Congress delegated the "authority to give meaning" to the terms of 19 U.S.C. § 1677(33) to Commerce through its enactment of the Uruguay Round Agreements Act ("URAA"), which gives Commerce both the general authority to issue such regulations as may be necessary to ensure that the provisions of the URAA are implemented, ***and*** the specific authority to define the terms of 19 U.S.C. § 1677(33) through the URAA's inclusion of a revised "affiliated persons" definition as further explained in the accompanying Statement of Administrative Action ("SAA"). Here, Commerce acted within its delegated authority and the Court should affirm Commerce's decision.

Second, should the Court decide that Congress did not delegate discretionary authority to Commerce, *Loper Bright* reaffirms the deference owed to "the agency's 'body of experience and informed judgment'" as articulated in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Loper*

2

*Bright*, 144 S. Ct. at 2251 (quoting *Skidmore*, 323 U.S. at 140). Specifically, *Loper Bright* and *Skidmore* instruct that the Court should "seek aid from the interpretations of those responsible for implementing particular statutes" in finding the best interpretation, especially "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time . . . ." *Loper Bright*, 144 S. Ct. at 2262 (citing *Skidmore*, 323 U.S. at 140). Here, Commerce has consistently interpreted the affiliated persons' definition through partnership, 19 U.S.C. § 1677(33)(C), to require more than a mere contractual agreement. Further, Commerce has consistently required substantial evidence of control to find affiliation under 19 U.S.C. § 1677(33)(G). Because Commerce is the agency responsible for implementing this statute, the Court should "seek aid" from its expertise when interpreting this statute.

Finally, Commerce's interpretation of 19 U.S.C § 1677(33) is the "single, best meaning" of the statute. Regarding "partners" as it appears in § 1677(33)(C), Congress clearly did not intend to include all possible meanings of the term "partners" in their definition of affiliated persons, but instead only the definition that is most relevant to the issue (*e.g.*, entities sharing joint ownership or engaging in joint selling activities). Further, regarding "control" as used in § 1677(33)(G), Commerce's interpretation as articulated in 19 C.F.R. § 351.102(b)(3) mirrors the language included in the SAA, which was approved by Congress as the authoritative expression on the interpretation of the URAA.

## II. LEGAL BACKGROUND

### 1. *Loper Bright Enterprises v. Gina Raimondo*

On June 28, 2024, the Supreme Court decided *Loper Bright Enterprises v. Raimondo*, which overturned the landmark decision *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron*, when statutes were deemed ambiguous, meaning that Congress had not spoken to the precise question at issue, courts were instructed to

defer to an agency's interpretation of the statute, so long as the interpretation was permissible, even if the interpretation was not the reading the court would have reached in the first place. *See Chevron*, 467 U.S. at 843 & n.11. In *Loper Bright*, the Court overruled this deference on the basis that the Administrative Procedures Act ("APA") required courts to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." *See* 144 S. Ct. at 2302 (quoting 5 U.S.C. § 706). In practice, this means that courts must now "exercise their independent judgment in deciding whether an agency has acted within its statutory authority" and must determine the "single, best meaning" of any statute using traditional statutory interpretation tools. *Loper Bright*, 144 S. Ct. at 2266, 2273.

The Supreme Court in *Loper Bright* also explained that this holding does not mean that "Congress cannot or does not confer discretionary authority on agencies." 144 S. Ct. at 2268. Specifically, the Supreme Court recognized:

> In a case involving an agency, of course, the statute's meaning may well be that the agency is authorized to exercise a degree of discretion. Congress has often enacted such statutes. For example some statutes ***'expressly delegate{}' to an agency the authority to give meaning to a particular statutory term***. Others empower an agency to ***prescribe rules to 'fill up the details' of a statutory scheme***, or ***to regulate subject to the limits imposed by a term or phrase*** that 'leaves agencies with flexibility,' such as 'appropriate' or 'reasonable.'

*See id.* at 2263 (internal citations and footnotes omitted) (emphasis added). In these instances, the Supreme Court explained its role as "recognizing constitutional delegations, 'fix{ing} the boundaries of {the} delegated authority . . . and ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries." *See id.* (internal citations omitted). Thus, the Court's role is not to interpret the statute in this scenario, but to ensure the agency acted reasonably and within Congress's delegation of authority to it.

When independently interpreting a statute, the Supreme Court reaffirmed *Skidmore* deference and held that "courts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes. Such interpretations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA." *See id.* at 2262 (citing *Skidmore*, 323 U.S. at 140). Since before *Chevron*, courts have "applied deferential review . . . {when}. . . a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency" because application of the term is "sufficiently intertwined with the agency's factfinding." *See id.* at 2259–60. Moreover, the Supreme Court recognized that "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Id.* at 2262 (citing *Skidmore*, 323 U.S. at 140; *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 549 (1940)). Finally, the Supreme Court noted than "{a}n agency's interpretation of a statute . . . may be especially informative 'to the extent it rests on factual premises within {the agency's} expertise." *Id.* at 2251 (internal citations omitted).

### 2. *Commission Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*

On April 25, 2023, the CAFC held in *COALITION*, that by enacting Section 103 of the URAA Congress provided a "grant of regulatory-implementation power to Commerce" to "adopt 'such regulations, as may be necessary to ensure that any provision of {the URAA}, or amendment made by {the URAA}, that takes effect on the date any of the Uruguay Round Agreements enters into force with respect to the United States is appropriately implemented on such date.'" *See COALITION*, 66 F.4th at 977 (citing 19 U.S.C. § 3513(a)(2)). The CAFC also noted that Congress approved the URAA's SAA as "an authoritative expression by the United States concerning the

5

interpretation and application of the Uruguay Round Agreements and {the URAA} in any judicial proceeding in which a question arises concerning such interpretation or application." *See COALITION*, 66 F.4th at 972 (citing 19 U.S.C. § 3513(d)); *see also* Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1 (1994).

On this basis, the CAFC held that Commerce had the statutory authority to issue a regulation creating an expedited-review process. Specifically, the CAFC relied on the URAA's general grant of regulatory implementation power under Section 103 (codified as 19 U.S.C. § 3513(a)), and the fact that "the SAA itself made the connection between the expedited-review process at issue and" the statute at issue in the case. *See COALITION*, 66 F.4th at 977-78.

### III. ARGUMENT

#### A. Congress Delegated the Authority to Give Meaning to the Terms of 19 U.S.C. § 1677(33) to Commerce

In this specific case, Congress delegated the authority to give meaning to the terms in the affiliated persons statute (19 U.S.C. § 1677(33)) to Commerce through the URAA, as contemplated by the Supreme Court in *Loper Bright*. First, in Section 103 of the URAA, Congress expressly gave Commerce the authority to "fill up the details" in the URAA's statutory scheme to ensure that every provision of the URAA and the Uruguay Round Agreements was implemented. *See Loper Bright*, 144 S. Ct. at 2263; 19 U.S.C. § 3513(a)(2). Second, Congress gave Commerce the specific authority to define the terms in 19 U.S.C. § 1677(33) through the SAA's direct discussion of the revised "affiliated persons" definition in 19 U.S.C. §1677(33). *See Loper Bright*, 144 S. Ct. at 2263; *COALITION*, 66 F.4th at 977-78. Together, these delegations of authority allow Commerce to define the terms at issue in this case, meaning the reviewing court fulfills its role by "recognizing constitutional delegations, 'fix{ing} the boundaries of {the} delegated authority . . .

and ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries . . . ." *Loper Bright*, 144 S. Ct. at 2263.

The Supreme Court in *Loper Bright* recognized that there are some instances where Congress has delegated the general authority to "fill up the details" of statutory schemes to the agency that administers a statute. 144 S. Ct. at 2263. Congress expressly delegated this general regulatory authority to Commerce through its enactment of Section 103 of the URAA, which empowered Commerce to "issue such regulations, as may be necessary to ensure that any provision of {the URAA}, or amendment made by {the URAA} is appropriately implemented . . . ." *See* 19 U.S.C. § 3513(a)(2); *see also COALITION*, 66 F.4th at 977. The URAA thus grants general authority for Commerce to interpret the statute and regulate accordingly.

Second, Congress has expressly delegated to Commerce the specific authority to define the terms in 19 U.S.C. § 1677(33) as described in *Loper Bright* through the SAA's direct discussion of a revised "affiliated persons" definition. *See Loper Bright*, 144 S. Ct. at 2263; *see also COALITION*, 66 F.4th at 977. The SAA, approved by Congress as "an authoritative expression . . . concerning the interpretation and application of the {URAA} in any judicial proceeding{,}" 19 U.S.C. § 3513(d), explains that one of the goals of the URAA was to revise the affiliated persons' definition and address the importance of "control" in the analysis. *See* SAA at 838. Congress explained that the inclusion of control as an indicator of affiliation would "permit a more sophisticated analysis which better reflects the realities of the marketplace" and allow Commerce to regulate "modern business arrangements, which often find one firm operationally in a position to exercise restraint or direction over another . . . ." SAA at 838 (internal quotation marks omitted). The SAA itself connects the affiliated persons' statute, 19 U.S.C. § 1677(33), with Commerce's related regulation describing control, 19 C.F.R. § 351.102(b)(3), because the regulation, the

statute, and the SAA all use the same language. *Compare* SAA at 838, *with* 19 U.S.C. § 1677(33), *and* 19 C.F.R. § 351.102(b)(3) (all referencing the definitions listed in § 1677(33) and describing control as being "legally or operationally in a position to exercise restraint or direction over" another person). In this way, through the SAA, Congress specifically empowered Commerce to define "affiliated persons" under § 1677(33) in the context of antidumping law. Thus, Commerce has the discretion to determine which entities qualify as affiliated persons under § 1677(33) and to consider control in this determination where relevant. *See COALITION*, 66 F.4th at 977; *Loper Bright*, 144 S. Ct. at 2263.

When a statute grants discretionary authority to an agency, as it has in this case, the court's role is to fix the boundaries of the delegated authority and "ensur{e} the agency has engaged in 'reasoned decisionmaking' within those boundaries . . . ." *Loper Bright*, 144 S. Ct. at 2263. Here, Commerce has engaged in reasoned decisionmaking when evaluating the relationship between [    ] and LDC Sucos. *See Final IDM* at 11–13 (citing DQR at Exhibit D3; SAQR at Supp. A-5). Thus, the Court should uphold Commerce's interpretation of 19 U.S.C. § 1677(33) as applied to the facts of this case.

### B. Commerce's Interpretation Is Especially Useful Guidance for the Court if It Decides to Independently Interpret the Statute

Should the Court find that Congress did not expressly delegate power to Commerce to give meaning to the statutory terms of 19 U.S.C. § 1677(33), Commerce's interpretation is entitled to *Skidmore* deference, as reaffirmed in *Loper Bright*, because Commerce is the agency responsible for implementing the statute at issue and Commerce's interpretation rests on factual premises within its expertise. *See Loper Bright*, 144 S. Ct. at 2262–63, 2267 (quoting *Skidmore*, 323 U.S. at 140) (agency "interpretations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA").

Since before *Chevron*, the Supreme Court has recognized that "a different approach should apply where application of a statutory term was sufficiently intertwined with the agency's factfinding." *Loper Bright*, 144 S. Ct. at 2259–60 (citing *NLRB v. Hearst Publications, Inc.*, 322 U.S. 111 (1994) (deferring to the National Labor Relations Board's determination that newsboys were "employees" as used in the National Labor Relations Act); *Gray v. Powell*, 314 U.S. 402 (1941) (deferring to the Department of Interior's determination that a coal-burning railroad was not a coal "producer" under the Bituminous Coal Act)). As the agency charged with implementing the affiliated persons' statute, Commerce relies on factual premises within its expertise to interpret the statute's terms, and reviews record evidence to determine if parties are truly affiliated under 19 U.S.C. § 1677(33), building upon years of factual determinations regarding affiliation, made on a case-by-case basis.[1]

When interpreting the term "partners" under 19 U.S.C. § 1677(33)(C), Commerce properly narrowed this term to business partnerships where parties "jointly own" something pursuant to the terms of the agreement, or engage in "joint selling activities." *Final IDM* at 13. Based on record evidence demonstrating this was not true in this case, Commerce determined "that this is a contractual relationship" rather than a partnership. *Final IDM* at 13 (citing DQR at Exhibit D3).

When assessing "affiliation" as defined under 19 U.S.C. § 1677(33)(G), Commerce has consistently reviewed record evidence to determine if one party controls the other. The SAA explains that this was the goal of this provision of the URAA, to allow Commerce to review

---

[1] Moreover, as recently explained by the Federal Circuit in *Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*, when Commerce uses statutory terms that are "general in nature" they "indicat{e} that Congress intended to delegate the question of whether particular facts satisfy the statute's requirements to Commerce." 102. F.4th 1252, 1259 (Fed. Cir. 2024). Here, Congress delegated the question of whether particular facts satisfy the affiliated parties' definition including general terms such as "partners" and "control" and Commerce reasonably answered this question.

different commercial arrangements for affiliation based on record evidence of control. *See* SAA at 838. Commerce has consistently determined that contractual agreements, even exclusive ones, do not necessarily create control. *See e.g.*, *Ta Chen Stainless Steel Pipe v. United States*, 1999 Ct. Intl. Trade LEXIS 110, at *24 (Oct. 28, 1999); *TIJID, Inc. v. United States,* 366 F. Supp. 2d 1286, 1299 (Ct. Int'l Trade 2005). This is the same interpretation that Commerce applied in this case. *Final IDM* at 12. Specifically, Commerce thoroughly analyzed the "contractual terms between LDC and its supplier" and found that they "recognize the sovereignty of the parties and indicate no obligation toward each other beyond those spelled out by the terms of the contract." *Final IDM* at 12 (citing DQR at Exhibit D3). Moreover, Commerce's interpretation is once again based on factual determinations within its expertise making it "especially informative" to the Court in determining the meaning of 19 U.S.C. § 1677(33). *Loper Bright*, 144 S. Ct. at 2251 (internal citation omitted).

  C. **Commerce's Interpretation of 19 U.S.C. § 1677(33) is Best**

Even if the Court independently interprets 19 U.S.C. § 1677(33), this question is not outcome determinative because Commerce's interpretation as applied in this case is the "single, best meaning" of the statute. Commerce's interpretation of the term "partners" in § 1677(33)(C), logically limits the definition to relevant partnerships with joint ownership and joint selling activities. *See Final IDM* at 13. Moreover, Commerce's interpretation of "control" in § 1677(33)(G), as articulated in 19 C.F.R. § 351.102(b)(3), matches the SAA, as required by the URAA. *See* 19 U.S.C. § 3512(d).

First, Commerce's interpretation of the term partners, as used in 19 U.S.C § 1677(33)(C), logically narrows the definition to relevant business partnerships for antidumping proceedings. Not all contractual relationships rise to the level of a partnership as articulated in § 1677(33)(C). The colloquial use of the term "business partner" would be overinclusive and capture parties that

10

are not "affiliated" as envisioned by Congress in 19 U.S.C. § 1677(33). For example, if any party with whom a respondent entered a commercial transaction were deemed a business "partner," it might improperly include parties from the respondent's sales, purchases, leases, and services. Instead, the best interpretation is the one applied by Commerce. *See Final IDM* at 13. In this case, Commerce properly determined that LDC Sucos and [    ] are not partners within the meaning of §1677(33)(C) because they "do not jointly own anything pursuant to the terms of their contract . . . do not engage in joint selling activities." *See Final IDM* at 13 (citing DQR at Exhibit D3). Further, the parties do not share risks, for example, [

]. *See* Def.-Intervenor's Response in Opposition to Plaintiff's Rule 56.2 Motion for J. Upon the Agency R. (ECF 35, 36) at 25 ("Def-Int. Br.") (citing DQR at Exhibit D3); *see also* Partner, Black's Law Dictionary (11th ed. 2019) (defining partner as "{s}omeone who shares or takes part with another, esp. in a venture with shared benefits and shared risks").

Second, Commerce's interpretation of "control" as used in 19 U.S.C. § 1677(33)(G) is best because it mirrors the text of the SAA. Plaintiff has not challenged Commerce's *interpretation* of the term "control," but instead has challenged Commerce's factual *analysis* of control as contrary to law. *See* Plaintiff Ventura Coastal, LLC's Memorandum in Support of its Rule 56.2 Motion for Judgment Upon the Agency Record (ECF 30, 31) at 23-32. LDC Sucos addresses these arguments in its response brief. *See* Def.-Int. Br. at 17-23. To the extent Plaintiff raises these arguments now, Commerce's definition of control is aligned with the statute, and the SAA text, which explains that "'control' exists if one person is legally or operationally in a position to exercise restraint or direction over another person." *Compare* SAA at 838, *with* 19 C.F.R. § 351.102(b)(3). Because 19 U.S.C. § 1677(33) is part of the URAA, courts must rely on the SAA for any question of interpretation pursuant to 19 U.S.C. § 3512(d). Commerce's interpretation is best because it did

11

just that when interpreting § 1677(33)(G) through its issuance of 19 C.F.R. § 351.102(b)(3). Moreover, as envisioned by the SAA, Commerce examined the contractual terms at issue to determine if either party exercised control over the other and made a factual determination supported by substantial evidence that the terms "recognize the sovereignty of the parties." *See Final IDM* at 12 (citing DQR at Exhibit D3); *see also* Def.-Int. Br. at 17-23.

## IV. CONCLUSION

For the foregoing reasons, LDC Sucos asks the Court to affirm Commerce's interpretation of 19 U.S.C. § 1677(33), as applied to the facts of this case. Moreover, LDC Sucos respectfully requests that the Court enter judgment in favor of Defendant and affirm Commerce's *Final AD Determination* as it is supported by substantial evidence and is otherwise in accordance with law.

Respectfully submitted,

/s/ Gregory J. Spak
Gregory J. Spak
Jessica E. Lynd
Cristina M. Cornejo

White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600
gspak@whitecase.com

August 13, 2024                                    *Counsel to Louis Dreyfus Company Sucos S.A*

# CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The page length for LDC Sucos's Supplemental Brief, as computed by White & Case LLP's word processing system (Microsoft Word 2016), is 12 pages.

/s/ Gregory J. Spak
Gregory J. Spak