**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

VENTURA COASTAL, LLC,

> Plaintiff,

v.

UNITED STATES,

> Defendant,

and,

LOUIS DREYFUS COMPANY SUCOS
S.A.,

> Defendant-Intervenor.

Before: Hon. Claire R. Kelly,
Judge

Court No. 23-00009

## PLAINTIFF'S SUPPLEMENTAL RESPONSE BRIEF REGARDING SUBSEQUENT AUTHORITY

Daniel B. Pickard, Esq.
Claire M. Webster, Esq.

**BUCHANAN INGERSOLL & ROONEY PC**
1700 K Street, NW
Washington, D.C. 20006
(202) 452-7900

*Counsel to Ventura Coastal, LLC*

Dated: August 30, 2024

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT........................................................ 1

II. ARGUMENT............................................................................................................. 1

    A.    **Congress Did Not Delegate Unfettered Authority to Commerce to Interpret 19 U.S.C. § 1677(33) Under Loper Bright and COALITION**................................ 1

    B.    **Commerce's Authority to Interpret the Statute Does Not Exist Outside of the *Chevron* or *Loper Bright* Interpretation Schemes** ............................................. 4

III. CONCLUSION.......................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co.*,
    5 F.4th 1367 (Fed. Cir. 2021) ...................................................................................6, 7

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024)........................................................................................*passim*

*Smith-Corona Group v. United States*,
    713 F.2d 1568 (Fed. Cir. 1983).................................................................................6, 7

*Tension Steel Indus. Co. v. United States*,
    179 F. Supp. 3d 1185 (Ct. Int'l Trade 2016) ...............................................................3

*TIJID, Inc. v. United States*,
    366 F. Supp. 2d 1286 (Ct. Int'l Trade 2005) ...............................................................4

*Tri Union Frozen Prods., Inc. v. United States*,
    163 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) ...............................................................5

**Statutes**

19 C.F.R. § 351.102(b)(3)..............................................................................................4, 5

19 U.S.C. §1677(33)....................................................................................................*passim*

19 U.S.C. section 1677(33)(G) ...........................................................................................3

19 U.S.C. § 3513............................................................................................................2

19 U.S.C. § 3513(a)(2)....................................................................................................2

**Other Authorities**

Pub. L. No. 96-39, § 3(b), 93 Stat. 144, 148-49 (1979)................................................2

Trade Agreements Act of 1979............................................................................................2, 3

Uruguay Round Agreements Act............................................................................................1, 2, 3

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Ventura Coastal LLC ("Ventura" or "Plaintiff") respectfully submits this Supplemental Response Brief in response to the briefs of Defendant and Defendant Intervenor, ECF 75, 76, and to the Court's Order of July 8, 2024, regarding whether the Department of Commerce ("Commerce") has the "authority to give meaning" to the terms of 19 U.S.C. §1677(33) ("the Statute"). ECF 70. While Commerce has the authority to issue regulations to implement the statute, it does not have the "authority to give meaning" to the terms of this statute. While Congress has delegated some rulemaking authority to an agency, as it did to Commerce under the Uruguay Round Agreements Act ("URAA"), that does not endow Commerce with the authority to give meaning to the terms of the URAA. Accordingly, the Court should employ its own interpretation of the terms of the Statute.

## II.    ARGUMENT

### A.    Congress Did Not Delegate Unfettered Authority to Commerce to Interpret 19 U.S.C. § 1677(33) Under Loper Bright and COALITION

Congress did not delegate unfettered authority to Commerce to interpret the URAA under *Loper Bright* and *COALITION*. Both the Government and LDC Sucos's supplemental briefs would have this Court believe that Congress delegated broad authority for Commerce to interpret the Statute, including nontechnical terms, such as the definition of "partners." In fact, while Congress delegated authority for Commerce to interpret the URAA, that grant of authority was comparatively narrow.

LDC conflates the Supreme Court's examples of delegations of authority. In its brief, LDC claims both that, "Congress delegated the authority to give meaning to the terms in the affiliated persons statute," and that, "Congress expressly delegated . . . general regulatory authority to {fill up the details to} Commerce . . . ." LDC Sucos Supplemental Brief (ECF 76) at 6-7.

The Supreme Court provides that, "In a case involving an agency, of course, the statute's meaning may well be that the agency is authorized to exercise a degree of discretion," and goes on to describe various degrees of discretion: that some statutes "expressly delegate" the authority for an agency to "give meaning" to a term, others give an agency the authority to "fill up the details" of a statutory scheme, and others give an agency to have flexibility subject to statutory limits. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2263 (2024).

Here, Congress delegated the authority to Commerce to regulate subject to limits under the URAA. The URAA's delegation of authority to Commerce to enact regulations implementing that statute does not provide Commerce with unfettered jurisdiction over the meaning of that statute. Indeed, the URAA stipulates that Commerce may implement such regulations as necessary for the statute to be "appropriately implemented." 19 U.S.C. § 3513(a)(2). That is, the statute is phrased to delegate regulatory authority to Commerce, but it does not delegate to Commerce the broader "authority to give meaning" to the terms of the statute.

The Government relies on Congress's "fast track" authority to justify deference to the agency regarding the term "partners." Government Supplemental Brief (ECF 75) at 5-6. It describes the process of enacting a law through fast track authority, and implies that additional deference is due to Commerce's interpretation of statutes in part because of this "special framework." *Id.* However, the Government also acknowledged that Congress first introduced the statutory term "partners" in this context in the Trade Agreements Act of 1979. The 1979 version of the statute also uses the language, "Regulations necessary or appropriate . . . ," which is similar to the delegating language in the current version of the statute, *i.e.*, "may issue such regulations as may be necessary . . . ." *Compare* Pub. L. No. 96-39, § 3(b), 93 Stat. 144, 148-49 (1979), *with* 19

U.S.C. § 3513. That is, the operative statute and its delegating language were already in force prior to the passing of the URAA using fast track authority.

Furthermore, Commerce's ability to issue regulations to implement the URAA – or, for that matter, the Trade Agreements Act of 1979 – does not automatically give the agency deference regarding the meaning of those regulations. On this point, *Loper Bright* is clear. As noted above, the decision discusses a variety of ways that Congress may delegate authority to regulate to an agency. *See Loper Bright*, 144 S. Ct. at 2263. None of these types of delegation are immune to the judiciary's power to interpret the law. *See id.* at 2263, 2273.

*Loper Bright* is, indeed, clear that the manifold cases decided under the *Chevron* principle remain good law. *Loper Bright*, 144 S. Ct. at 2273. Under this holding, the Government would have this Court give deference to the agency's interpretation of the Statute in this instance because it did so in prior cases decided prior to the issuance of the opinion in *Loper Bright*. *See* Government Supplemental Brief (ECF 75) at 3-4 ("Thus, precedent sustaining Commerce's interpretation of the antidumping and countervailing duty statutes remains in effect under the principle of *stare decisis* even if a court had reached its decision under step two of the *Chevron* analysis."). Specifically, the Supreme Court ruled that:

> By {overruling *Chevron*} . . . we do not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful – including the Clean Air Act holding of *Chevron* itself – are still subject to statutory *stare decisis* despite our change in interpretive methodology.

*Loper Bright*, 144 S. Ct. at 2273. It is appropriate, then, to look specifically at this Court's decisions regarding the meaning of the relevant statutory provision: 19 U.S.C. section 1677(33)(G). This Court has upheld that, in determining whether parties are affiliated through a close supplier relationship, Commerce first considers whether "the buyer or supplier has become reliant on the other." *Tension Steel Indus. Co. v. United States*, 179 F. Supp. 3d 1185, 119 (Ct. Int'l Trade 2016)

(citing Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1 at 838 (1994) ("SAA")). If the record indicates that one or more parties is reliant on the other, Commerce then considers whether the parties' relationship has "the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise or foreign like product." 19 C.F.R. § 351.102(b)(3); *see also TIJID, Inc. v. United States*, 366 F. Supp. 2d 1286, 1299 (Ct. Int'l Trade 2005). Finally, in determining whether two parties are affiliated through a close supplier relationship, "{Commerce} will consider the temporal aspect of a relationship in determining whether control exists." 19 C.F.R. § 351.102(b)(3). The question in this matter is whether, in light of *Loper Bright,* this Court must defer to Commerce's extremely narrow and unsupported interpretation of "partners." As explained further below, it does not.

**B.       Commerce's Authority to Interpret the Statute Does Not Exist Outside of the *Chevron* or *Loper Bright* Interpretation Schemes**

The Government's brief argues that "the Federal Circuit has long recognized that Commerce's determinations in antidumping and countervailing duty matters are entitled to deference *distinct* from *Chevron*, due to the Act's complex and technical nature." Government Supplemental Brief (ECF 75) at 6. In this regard, *Loper Bright* is clear:

> *Chevron*'s broad rule of deference . . . demands that . . . ambiguities of all stripes trigger deference. Indeed, the Government and, seemingly, the dissent continue to defend the proposition that *Chevron* applied even in cases having little to do with an agency's technical subject matter expertise. . . .

144 S. Ct. at 2267. Furthermore, the field of legal interpretation has been "'emphatically,' 'the province of the judicial department' for at least 221 years." *Id.* at 2273 (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803).

The question at issue in this case is the definition of the term "partners" under 19 U.S.C. section 1677(33). Plaintiff does not deny that certain actions Commerce undertakes in antidumping

and countervailing duty investigations – for example, the use of the *Cohen's d* test in the calculation of a dumping margin – may be as complex and technical in nature as an agency's work can be. *See, e.g.*, *Tri Union Frozen Prods., Inc. v. United States*, 163 F. Supp. 3d 1255, 1308 (Ct. Int'l Trade 2016). This case, however, is purely a matter of the meaning of a common word under a statute. Under *Loper Bright*, interpreting the meaning of this statute is <u>emphatically</u> the role of this Court.

> *Loper Bright* also dictates:
>
> But even when an ambiguity happens to implicate a technical matter, it does not follow that Congress has taken the power to authoritatively interpret the statute from the court and given in to the agency. Congress expects courts to handle technical statutory questions. . . . And although an agency's interpretation of a statute "cannot bind a court," it may be especially informative "to the extent it rests of factual premises within {the agency's} expertise."

*Loper Bright*, 144 S. Ct. at 2267 (quoting *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 98 n.8 (1983)). Simply put, the statutory term "partners" does not require any technical antidumping expertise, and, accordingly, no deference is owed.

More specifically, Congress did not expressly delegate to Commerce the statutory authority to define the word "partners" under 19 U.S.C. § 1677(33). Even if Commerce had interpreted its authority to promulgate regulations to cover definition of the meaning of "partners," it did not do so. Commerce's regulations only provide that "'Affiliated persons' and 'affiliated parties' have the same meaning as in { 19 U.S.C. § 1677(33)}." 19 C.F.R. § 351.102(b)(3). That definitional regulation is silent as to joint owning or selling – the basis on which Commerce made its determination that LDC Sucos and its supplier were not partners. I&D Memo at 13, P.R. 294. Commerce appears to have manufactured that consideration in interpreting the statutory term "partners." To put a fine point on the matter, Commerce could have issued a regulation that defined partnership, but it did not do so.

Commerce's interpretation of 19 U.S.C. § 1677(33) cannot be the "best" definition of the statute, as there is no explanation or justification for how it arrived at this definition. LDC's brief offers post-hoc rationalizations for Commerce's determination – that it "logically narrows the definition to relevant business partnerships for antidumping proceedings," LDC Sucos Supplemental Brief (ECF 76) at 10, and that "{t}he colloquial use of the term 'business partner' would be overinclusive, *Id.* These rationalizations <u>are not</u> in Commerce's issues and decision memorandum.

However, even if the Court were to determine that the definition of the term "partners" requires technical expertise, such that the Commerce's interpretation of the statute should be informative, Commerce's failure to fully review the evidence before it still necessitates a remand.

In support of its determination that the parties were not affiliated under 771(33)(G) of the Act, Commerce noted that "contractual terms between LDC and its supplier . . . indicate no obligation toward each other beyond those spelled out by the terms of the contract." I&D Memo at 12, P.R. 294. It is axiomatic that contractual obligations are contained within the four corners of the contract. This tautology cannot support Commerce's decision. Commerce also alleges that "contractual terms between LDC and its supplier recognize the sovereignty of the parties." I&D Memo at 12, P.R. 294. Yet Commerce provides no support or explanation for this conclusion, much less a reasonably discernible decisional path. Therefore, Commerce failed to provide a "reviewable, reasoned basis" for its determination that LDC and its supplier were not affiliated through a close supplier relationship. *See Bando Chem. Indus., Ltd.*, 787 F. Supp. at 227 (1992).

In support of its argument, the Government's brief relies heavily on two Federal Circuit cases: *Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co.*, 5 F.4th 1367 (Fed. Cir. 2021), and *Smith-Corona Group v. United States*, 713 F.2d 1568 (Fed. Cir. 1983). *See*

Government Supplemental Brief (ECF 75) at 6-8. These cases are both distinguishable from the case at bar. In *Borusan*, the Federal Circuit stated:

> Antidumping and countervailing duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than courts. This deference is both greater than and distinct from that accorded the agency in interpreting the statutes it administers, because it is based on Commerce's technical expertise in identifying, selecting and applying methodologies to implement the dictates set forth in the governing statute, as opposed to interpreting the meaning of the statue itself where ambiguous.

5 F.4th at 1374-75 (emphasis added). That is, the Federal Circuit has made clear that, while Commerce may interpret a statute, it does not have the ability to interpret that out of keeping with common terminology, as is at issue in this case.

> Similarly, in *Smith-Corona*, the Federal Circuit found that:

> The Secretary {of Commerce} has broad discretion in executing the law. While the law does not expressly limit the exercise of that discretion with precise standards or guidelines, some general standards are apparent and these must be followed. The Secretary cannot, under the mantle of discretion, violate these standards or interpret them out of existence.

713 F.2d at 1571 (emphasis added). Under this case, too, Commerce is forbidden from acting indiscriminately. The Government rightly notes that *Smith-Corona* was decided the year prior to *Chevron*. Government Supplemental Brief (ECF 75) at 7. While *Chevron* is no longer good law, this excerpt from *Smith-Corona* makes it clear that the principle of reasoned understanding of a statute by Commerce has always been paramount. As briefed thoroughly, Commerce failed to articulate a reasoned understanding of the term "partners" here.

The Government also claims that Commerce's analysis here was "intertwined" with the agency's factfinding and relies on *Loper Bright*'s recognition of deference toward an agency where "application of a statutory term was sufficiently intertwined with the agency's factfinding." Government Supplemental Brief (ECF 75) at 8-9; *Loper Bright*, 144 S. Ct. at 2259-60. As

discussed above, interpretation of the definition of the term "partners" under 19 U.S.C. § 1677(33) is a legal determination that is to be made by the Court. However, to the extent that that definition is "intertwined with the agency's factfinding," Commerce's underlying determination employed very little factfinding. Its Issues and Decision Memorandum dedicated only one sentence to the issue with no cited support: "LDC and its supplier do not jointly own anything pursuant to the terms of their contract and do not engage in joint selling activities." I&D Memo at 12, P.R. 294.

## III.    CONCLUSION

The Government argues that "An interpretation of the word 'partners' untethered from the facts of any individual record could lead to absurd results that are contrary to the intention of Congress." Government Supplemental Brief (ECF 75) at 10. We agree. As we have argued in our briefs and during Oral Argument, the record underlying this appeal demonstrates that LDC Sucos and its supplier are partners. However, here Commerce adopted an overly narrow interpretation of the term "partners," an interpretation that is no longer subject to *Chevron* deference and was unreasonable and unjust.

*Loper Bright* held that courts may not defer to an agency's interpretation of the law. 144 S. Ct. at 2273. This Court must independently decide if "partners" only means companies that either own something in common or have a joint selling activity. This is not what a partner is. For this reason, and for the reasons discussed in Plaintiff's submissions throughout this case, we respectfully request that the Court remand this matter back to the agency for further consideration.

Respectfully submitted,

/s/ Daniel B. Pickard, Esq.
Daniel B. Pickard, Esq.
Claire M. Webster, Esq.

**BUCHANAN INGERSOLL & ROONEY PC**
1700 K Street, NW
Washington, D.C. 20006
Telephone: 202-452-7900
Email: daniel.pickard@bipc.com

*Counsel for Ventura Coastal, LLC*

Dated: August 30, 2024