IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| VENTURA COASTAL, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Court No. 23-00009<br>) |
| UNITED STATES, | )<br>) |
| Defendant, | )<br>) |
| and | )<br>) |
| LOUIS DREYFUS COMPANY SUCOS S.A., | )<br>) |
| Defendant-Intervenor. | )<br>) |

**DEFENDANT'S SUPPLEMENTAL REPLY
BRIEF TO THE COURT'S JULY 8, 2024 LETTER**

Defendant, the United States, respectfully replies to the Court's letter dated July 8, 2024 (ECF No. 70), instructing the parties to submit supplemental briefs addressing whether Congress delegated to Commerce the "authority to give meaning" to the terms of 19 U.S.C. § 1677(33).

**ARGUMENT**

In its Supplemental Brief Regarding Subsequent Authority, plaintiff, Ventura Coastal, LLC (Ventura), argues that there are different types of delegations of authority identified in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), and that 19 U.S.C. § 3513(a)(2) delegates "regulatory authority to Commerce{ } but does not delegate to Commerce the broader 'authority to give meaning' to the terms of the statute." ECF No. 73 at 4-5. Accordingly, Ventura contends that the Court should give Commerce no deference with respect to its interpretation of the terms "partners" and "close supplier relationship" under 19 U.S.C.

§ 1677(33)(C). As we demonstrate below, Ventura misinterprets *Loper Bright* and fails to acknowledge prior Federal Circuit precedent providing Commerce with deference.

In *Loper Bright*, the Supreme Court stated:

> {i}n a case involving an agency, of course, the statute's meaning may well be that the agency is authorized to exercise a degree of discretion. Congress has often enacted such statutes. For example, some statutes "expressly delegate{ }" to an agency the authority to give meaning to a particular statutory term. . . . Others empower an agency to prescribe rules to "fill up the details" of a statutory scheme . . . or to regulate subject to the limits imposed by a term or phrase that "leaves agencies with flexibility," . . . such as "appropriate" or "reasonable."

144 S. Ct. 2244, 2263 (internal citations omitted). Thus, the Court acknowledged that Congress often authorizes agencies to employ discretion and identified various examples of when Congress has provided for agency discretion. The Court further explained that "{w}hen the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 2263. And, the "court fulfills that role by recognizing constitutional delegations {and} 'fix{ing} the boundaries of {the} delegated authority,'" which indicates that the three "types" of delegation described by the Court—delegation to give meaning to a particular statutory term, delegation to prescribe rules to fill in the details of a statutory scheme, and delegation through the term or phrase used in the statutory scheme—are reviewed in the same manner. *Id.* (internal citations omitted).

Where, as here, the best reading of the statute is that it delegates authority to the agency, regardless of which "type" of delegation, and *Loper Bright* requires that in exercising their independent judgment to interpret the statute and effectuate the will of Congress within constitutional limits, courts must recognize constitutional delegations, "fixing the boundaries of

2

the delegated authority, and ensuring the agency has engaged in "'reasoned decisionmaking'" within those boundaries." *Id.* This is the most reasonable understanding of the law because Commerce's authority to issue appropriate regulations to implement the statutory scheme inherently requires the authority to interpret the statute and engage in gap filling, including giving meaning to the terms that the statute does not define.[1]

Through 19 U.S.C. § 3513(a)(2), Congress delegated to Commerce the authority to regulate "as necessary" to give effect to the statute, which necessarily authorizes Commerce to interpret the statute, gap fill, and give meaning to the largely undefined terms of 19 U.S.C. § 1677(33), including the term "partners". *See Loper Bright*, 144 S. Ct. at 2263. The relevant statutory provision, 19 U.S.C. § 1677(33)(C), defines the term "affiliated persons" to include "partners," but provides no definition of what the term "partners" means. And, apart from the statutory scheme explicitly delegating to Commerce the authority to issue regulations as necessary or appropriate, which Ventura acknowledges, as it must, the Federal Circuit has long recognized that Congress delegated technical responsibility to Commerce to "fill up the details"

---

[1] Further, the Statement of Administrative Action accompanying the Uruguay Round Agreements Act includes language stating that the legislature and the executive understood Commerce should receive deference when interpreting the statute. *See* H.R. Doc. No. 316, 103rd Congress, 2d Session (1994) (SAA) at 818. In describing the standard of review applied in WTO panel review under Article 17.6 of the Antidumping Agreement, the SAA states that it would be analogous to the "deferential standard" applied by U.S. courts in reviewing the actions by Commerce. *Id.* Specifically, when the law may be interpreted in more than one way, a reviewing body must confirm a determination by Commerce that conforms to one of the permissible interpretations of the statute. *Id.* This indicates that Congress intended and understood there to be a deferential standard in U.S. domestic courts. *See* 19 U.S.C. § 3512(d) ("The statement of administrative action approved by the Congress under section 3511(a) of this title shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application.") If the Court were to afford no deference to Commerce's statutory interpretation this could create an incongruence with the standard applied at the WTO, which the SAA makes clear Congress and the executive were specifically trying to avoid. *See* SAA at 818.

of the Tariff Act of 1930, as amended, more generally. *Id.*; *see e.g.*, *also Smith-Corona Group v. United States*, 713 F.2d 1568, 1582 (Fed. Cir. 1983); *Melamine Chemicals, Inc. v. United States*, 732 F.2d 924, 928 (Fed. Cir. 1984) ("When the issue is the validity of a regulation issued under a statute an agency is charged with administering, it is well established that the agency's construction of the statute is entitled to great weight."). In its supplemental brief, Ventura does not contest the validity and applicability of this Federal Circuit precedent which predates *Chevron* and which addresses the deference afforded by Congress to determinations made by Commerce. *See* ECF No. 75 at 6-7. Nor does it contend that the prior appellate precedent which relied on *Chevron* is no longer good law. *See Loper Bright*, 144 S. Ct. at 2273 (directing that earlier cases relying on *Chevron* remain good law subject to *stare decisis*).

Nor does Ventura address the Federal Circuit's recent binding precedent concluding that, given the "broad statutory mandate" established by Congress in the Tariff Act of 1930, statutory terms that are "general in nature" "indicat[e] that Congress intended to delegate the question of whether particular facts satisfy the statute's requirements to Commerce." *Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252, 1259 (Fed. Cir. 2024). Indeed, although styled as a challenge to Commerce's interpretation of section 1677(33)(G), Ventura contests Commerce's evaluation of record information in determining whether the parties are affiliated within the meaning of 1677(33)(G). This is precisely the situation where Commerce is applying a general term to the facts of the case and precisely the situation where Commerce is afforded "considerable discretion," separate and apart from *Chevron* deference. *Asociacion*, 102 F. 4th at 1260 ("we have held that similarly general language used in a related provision of the antidumping statute committed to Commerce's discretion the question of whether particular facts satisfy the statute.").

With respect to the interpretation of "partners" under 19 U.S.C. § 1677(33)(C), Ventura only offers up dictionary definitions that it thinks should control, specifically "one associated with another especially in action," "a member of a partnership especially in business," "{a} member of a copartnership or firm; one who has united with others to form a partnership in business." *See* ECF No. 73 at 9-10. However, as explained in our supplemental brief, an interpretation of the word "partners" untethered from the facts of any individual record could lead to absurd results that are contrary to Congress's intent. Such an outcome undergirds the logic for affording Commerce deference in interpreting statutory terms in these "factbound determinations" like the one at issue here. *See* ECF No. 75 at 14. Accordingly, even if the Court were not to afford Commerce deference in its statutory interpretation, the Court should not accept Ventura's proposed interpretation because Commerce's interpretation is the best interpretation. Put simply, Commerce's interpretation avoids the possibility of adopting a definition wherein a mere contractual relationship would be sufficient to find affiliation under 19 U.S.C. § 1677. *See* IDM at 13.

Finally, Ventura reiterates the factual arguments it made in its prior briefing before the Court. ECF No. 73 at 5 (Plaintiff re-emphasizing its prior arguments concerning the determination by Commerce as to whether LDC and its supplier are "partners" and in a "close supplier relationship"). Ventura's arguments do not appear to implicate the question of deference as directed by the Court. Instead, Ventura argues that Commerce should have reviewed and weighed evidence on the record differently.[2] *Id.* at 6-7. These arguments go to

---

[2] Ventura continues to allege, for example, that Defendant-Intervenor, Louis Dreyfus Company Sucos S.A. (LDC), could only grow lemons "through its partnership with its supplier" and was therefore reliant upon the supplier. ECF No. 73 at 6, 8. We have previously addressed these factual arguments in our Motion For Judgement On the Administrative Record. *See* ECF No. 33 at 10-27.

weighing of record evidence and, thus, must be evaluated under the "substantial evidence" standard. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). Arguments concerning whether Commerce appropriately reviewed record information in determining whether the parties are affiliated have been fully briefed to the Court in our prior briefings and addressed at oral argument. Thus, we will not repeat our counter arguments again here.

In any event, setting aside questions of deference, as we explained in our opening brief, Commerce's interpretation is the best interpretation of the statute, and should be sustained.

## CONCLUSION

In sum, *Loper Bright* does not alter the relevant legal authority or standard of review to assess whether Commerce's affiliation determination is supported by substantial evidence and in accordance with law. For these reasons, we respectfully request that the Court sustain Commerce's final determination.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

OF COUNSEL

/s/Anne M. Delmare
Anne M. Delmare
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-0531

JONZACHARY FORBES
U.S. Department of Commerce
Office of Chief Counsel for
Trade Enforcement and Compliance
1401 Constitution Avenue, NW.
Washington, DC 20230-0001
Telephone: (240) 449-5906
Facsimile: (202) 482-8184
Email: JonZachary.Forbes@trade.gov

Email: Anne.M.Delmare@usdoj.gov

*Attorneys for Defendant*

August 30, 2024

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 30th day of August, 2024, a copy of the foregoing "Defendant's Supplemental Reply Brief To The Court's July 8, 2024 Letter" was filed electronically.

X  This filing was served electronically on all parties by operation of the Court's electronic filing system.

/s/ Anne M. Delmare<br>
ANNE M. DELMARE