UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| VENTURA COASTAL, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>LOUIS DREYFUS COMPANY SUCOS S.A.,<br><br>    Defendant-Intervenor. | Court No. 23-00009<br><br>**NON-CONFIDENTIAL VERSION**<br><br>Confidential Information has been deleted from pages 1 and 6-9. |

**DEFENDANT-INTERVENOR'S SUPPLEMENTAL RESPONSE BRIEF REGARDING NOTICE OF SUPPLEMENTAL AUTHORITY**

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT.................................................................................................................. 1

   A. Commerce Properly Exercised Its Expressly Delegated Authority to Define and Apply the Terms in 19 U.S.C. § 1677(33) In This Case ................................................................. 1

   B. The Court's Role Here Is to Ensure Commerce Has Engaged in "Reasoned Decisionmaking" Within the Bounds of This Delegated Authority ........................................... 3

   C. Petitioner's Proposed Interpretation for "Partners" As Used In 19 U.S.C. § 1677(33)(C) Is Overly Broad and Contrary to Congressional Intent................................................. 4

   D. The Court Should Disregard Petitioner's Request to Reweigh Evidence Regarding Commerce's Affiliation Analysis Under 19 U.S.C. § 1677(33)(G). ........................................... 6

   E. The Court Should Defer to Commerce's Application of Its Affiliated Persons Regulation In This Case 19 C.F.R. § 351.102(b)(3). ................................................................. 8

III. CONCLUSION.............................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allegheny Ludlum Corp. v. United States,*
   112 F. Supp. 2d 1141 (Ct. Int'l Trade 2000) ..................................................................7

*Auer v. Robbins,*
   519 U.S. 452 (1997).........................................................................................................8

*Bowles v. Seminole Rock & Sand Co.,*
   325 U.S. 410 (1945).........................................................................................................8

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States,*
   66 F.4th 968 (Fed. Cir. 2023) ......................................................................................2, 3

*Downhole Pipe & Equip., L.P. v. United States,*
   776 F.3d 1369 (Fed. Cir. 2015)........................................................................................6

*Goodman v. Shulkin,*
   870 F.3d 1383 (Fed. Cir. 2017)........................................................................................8

*Gray v. Powell,*
   314 U.S. 4023 (1941).......................................................................................................2

*Industriales de Aceitunas de Mesa v. United States,*
   102 F.4th 1252 (Fed. Cir. 2024) ......................................................................................4

*Loper Bright Enterprises v. Raimondo,*
   144 S. Ct. 2244 (2024)....................................................................................1, 2, 3, 4, 10

*Michaels Stores, Inc. v. United States,*
   766 F.3d 1388 (Fed. Cir. 2014)........................................................................................8

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Ins. Co.,*
   463 U.S. 29 (1983).........................................................................................................10

*Nakajima All Co., Ltd. v. United States,*
   744 F. Supp. 1168 (Ct. Int'l Trade 1990) ........................................................................7

*NLRB v. Hearst Publications, Inc.,*
   322 U.S. 111 (1994).........................................................................................................2

**STATUTES AND REGULATIONS**

19 C.F.R. § 351.102(b)(3)........................................................................................1, 2, 5, 6, 8, 9

19 U.S.C. § 1677(33) ................................................................................................1, 2, 5, 10

19 U.S.C. § 1677(33)(C) ..................................................................................... 4, 5, 8, 9

19 U.S.C. § 1677(33)(G) ................................................................................................6, 9

19 U.S.C. § 3513(a)(2) ......................................................................................................2, 3

## LEGISLATIVE MATERIALS

Statement of Administrative Action,
    H.R. Doc. No. 103-316, vol. 1 (1994) ............................................................... 3, 5

## ADMINISTRATIVE DETERMINATIONS

*Certain Lemon Juice from Brazil: Final Affirmative Determination of Sales at Less Than Fair Value,*
    87 Fed. Reg. 78939 (Dec. 23, 2022),
    and accompanying Issues and Decision Memorandum ...................................... 5

## MISCELLANEOUS

*Joint Venture*, Merriam-Webster, https://www.merriam-webster.com/legal/joint%20venture
    (last visited August 15, 2024) ............................................................................ 5

Joint Venture, BLACK'S LAW DICTIONARY (12th ed. 2024) ......................................... 5

iii

Case 1:23-cv-00009-CRK   Document 83   Filed 08/30/24   Page 5 of 15
PUBLIC VERSION

## I. INTRODUCTION

Pursuant to this Court's Order of July 8, 2024, Defendant-Intervenor Louis Dreyfus Company Sucos S.A. ("LDC Sucos") files this Supplemental Response Brief in response to Plaintiff Ventura Coastal LLC's ("Petitioner") Supplemental Brief (ECF 73, 74) ("Petr.'s Supp. Br.") filed on August 13, 2024. *See* Order, ECF 70 (July 8, 2024). Contrary to Petitioner's arguments, Commerce properly exercised the authority expressly delegated to it by Commerce to define and apply the general terms in 19 U.S.C. § 1677(33) to the facts of this case. Commerce considered the record evidence before it and acted within the bounds of its delegated authority when determining that LDC Sucos and [                        ] are not affiliated. This Court should reject Petitioner's broad definition for "partners" which is overly inclusive and contrary to Congressional intent, reject Petitioner's impermissible invitation to reweigh record evidence, and defer to Commerce's interpretation of its own regulations, a deference undisturbed by the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024).

## II. ARGUMENT

### A. Commerce Properly Exercised Its Expressly Delegated Authority to Define and Apply the Terms in 19 U.S.C. § 1677(33) In This Case

The Department of Commerce ("Commerce") properly exercised the general authority to define and apply the terms in the Affiliated Persons statute, 19 U.S.C. § 1677(33) to the facts of this case, as expressly delegated to Commerce by Congress. Specifically, Commerce used its uncontested rulemaking authority, granted through the Uruguay Round Agreements Act ("URAA"), to regulate which parties are Affiliated Persons under 19 U.S.C. § 1677(33) through its regulation under 19 C.F.R. § 351.102(b)(3). Commerce then properly applied this regulation to the facts of this case, in a manner whereby the "application of {the} statutory term was sufficiently intertwined with the agency's factfinding." *Loper Bright,* 144 S. Ct. at 2259–60.

1

As an initial matter, no party in this case disputes that Congress delegated some rulemaking authority to Commerce under 19 U.S.C. § 3513(a)(2) by empowering Commerce to "adopt 'such regulations, as may be necessary to ensure that any provision of {the URAA}, or amendment made by {the URAA}, that takes effect on the date any of the Uruguay Round Agreements enters into force with respect to the United States is appropriately implemented on such date.'" *See Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 66 F.4th 968, 977 (Fed. Cir. 2023) (citing 19 U.S.C. § 3513(a)(2)) ("*COALITION*"); *see also* Petr.'s Supp. Br. at 1, 4; Defendant United States' Supplemental Brief (ECF 75) at 6 ("Gov't Supp. Br."); LDC Sucos's Supplemental Brief (ECF 76, 77) at 7 ("Def-Int. Supp. Br."). Commerce relied on this express delegation to enact a regulation based on the revised Affiliated Persons definition included in the URAA, *see* 19 U.S.C. § 1677(33), further defining affiliated parties and affiliated persons in the antidumping context. *See* 19 C.F.R. § 351.102(b)(3). Commerce then properly applied this regulation in this case by considering the indicia of control enumerated in the regulation, including whether the parties were in a joint venture agreement by engaging in joint selling activities or joint ownership, whether the parties were in a close supplier relationship and whether the parties had any control over one another.

Petitioner attempts to distinguish between the URAA's delegation of "rulemaking authority" from the authority to "give meaning to the terms of the URAA." Petr.'s Supp. Br. at 1, 4. In this case, this distinction has no merit. Contrary to Petitioner's mischaracterization, LDC Sucos does not argue that the URAA's delegation of rulemaking authority to Commerce gives it "unfettered jurisdiction over the meaning of the statute." Petr.'s Supp. Br. at 4. Rather, LDC argues that this is an instance where "a particular statute empowered an agency to decide how a broad statutory term applied to the specific facts found by the agency." *Loper Bright*, 144 S. Ct.

2

at 2259–60 (citing *NLRB v. Hearst Publications, Inc.,* 322 U.S. 111, 130–31 (1994); *Gray v. Powell,* 314 U.S. 402, 411–13 (1941)). When an agency's "application of a statutory term {is} sufficiently intertwined with the agency's factfinding" the Supreme Court has applied a deferential review standard. *Loper Bright,* 144 S. Ct. at 2259–60.

Through the URAA, with its general grant of rulemaking authority, 19 U.S.C. § 3513(a)(2), and the URAA's Statement of Administrative Action with its explicit direction to consider "control" under the revised Affiliated Persons' definition, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1 (1994) at 838 ("SAA"), Congress expressly delegated to Commerce the authority to regulate which parties are affiliated within the antidumping context. *See Loper Bright,* 144 S. Ct. at 2263; *COALITION,* 66 F.4th at 977–78. To do so, Congress delegated to Commerce the authority to apply the statutory terms of the revised Affiliated Persons statute to the facts faced in each case. This is exactly what Commerce has done here, and the Court should defer to Commerce's application of the term in this case.

### B. The Court's Role Here Is to Ensure Commerce Has Engaged in "Reasoned Decisionmaking" Within the Bounds of This Delegated Authority

While Petitioner agrees that Congress has delegated some discretionary authority to Commerce through the URAA, it argues the Court's role is still "to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." Petr.'s Supp. Br. at 5 (citing *Loper Bright,* 144 S. Ct. at 2263). Petitioner fails to include in the quote, the next sentence in the Supreme Court's opinion which goes on to explain exactly how the court fulfills this role.

> The court fulfills that role ***by recognizing constitutional delegations, 'fix{ing} the boundaries of {the} delegated authority,' . . . and ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries.***

3

*Loper Bright*, 144 S. Ct. at 2263 (emphasis added). Thus, Congress is not meant to interpret the statute except to recognize constitutional delegations of authority and review the agency's actions and decisionmaking within these boundaries. Commerce acted within the bounds of its discretionary authority in this case and so its determination should be upheld by this Court.

    **C.    Petitioner's Proposed Interpretation for "Partners" As Used In 19 U.S.C. § 1677(33)(C) Is Overly Broad and Contrary to Congressional Intent**

Petitioner's self-referential definition is overly broad, contrary to Congressional intent, and provides no guidance to the Court. Petitioner asks the Court to rely on a "plain reading of the statute" which it says, "indicates that the defining feature of the relevant relationship (*i.e.*, partners) is their common relation to a partnership." Petr.'s Supp. Br. at 6. Contrary to Petitioner's argument, there is no one plain or ordinary meaning for the term "partners" and the definition Petitioner provides is both circular and too broad for Commerce's purposes. The term "partners" is general in nature and can mean different things in different contexts (*e.g.*, marriage partner, dance partner, lab partner, etc...). The general nature of the word encompasses irrelevant relationships including non-business partnerships, and contractual relationships where parties engage in a business transaction together or even colloquially refer to each other as "business partners" but are not affiliated in the context of antidumping. *See* Petr.'s Supp. Br. at 6.

The Federal Circuit has recently explained that a term being general, does not make a word ambiguous and is instead "more properly viewed as . . . {an} implied delegation of adjudicative authority to the agency rather than deference to the agency's interpretation of an ambiguous statute." *See Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252, 1261 (Fed. Cir. 2024). The Supreme Court recognized a similar principle in *Loper Bright*, noting that the Court has "applied a deferential standard of review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific

4

facts found by the agency" as the application of the term "was sufficiently intertwined with the agency's factfinding." 144 S. Ct. at 2259–60. Thus, it was logical and within Commerce's delegated authority to apply the general or broad term "partners" from 19 U.S.C. § 1677(33)(C), to the facts of this case and accordingly narrow the definition of the term to the most relevant relationship in the antidumping context, *i.e.*, companies that engage in joint selling activities or share joint ownership. *See Certain Lemon Juice from Brazil: Final Affirmative Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 78939 (Dec. 23, 2022) (PR 301) ("*Final AD Determination*"), and accompanying Issues and Decision Memo (Dec. 19, 2022) (PR 294) ("*Final IDM*") at 13.

Moreover, contrary to Petitioner's argument, Commerce's definition was based in a legal authority, *see* Petr.'s Supp. Br. at 1, the Affiliated Persons regulation, 19 C.F.R. § 351.102(b)(3). Under 19 C.F.R. § 351.102(b)(3), in determining whether "control" over another person exists within the meaning of 19 U.S.C. § 1677(33), Commerce is to consider "joint venture agreements." This dovetails with the statutory language instructing Commerce to consider "partners" and, of course, carries out the Congressional intent to consider "control" when determining affiliation. *See* SAA at 838. A joint venture is defined as "a cooperative business agreement or partnership between two or more parties that is usually limited to a single enterprise and that involves the sharing of resources, control, profits, and losses," *Joint Venture*, MERRIAM-WEBSTER, https://www.merriam-webster.com/legal/joint%20venture (last visited August 15, 2024), or "{a} business undertaking by two or more persons engaged in a single defined project . . . . {whose} . . . necessary elements are (1) an express or implied agreement; (2) a common purpose that the group intends to carry out; (3) shared profits and losses; and (4) each member's equal voice in controlling the project," *Joint Venture*, BLACK'S LAW DICTIONARY (12th ed. 2024). Thus, to determine

5

whether LDC Sucos and [   ] are partners within the meaning of 19 U.S.C. § 1677(33)(C), Commerce properly analyzed whether the parties jointly owned anything pursuant to the agreement or whether they engaged in joint selling activities, (*i.e.*, whether they are in a joint venture or had "shared profits and losses"), and determined that they were not. *Final IDM* at 13 (citing LDC Sucos's Response to Section D of the Antidumping Duty Questionnaire (Apr. 11, 2022) at Exhibit D3 ("DQR") (PR 116) (CR 104)). Thus, the Court should affirm Commerce's application of the general statutory term "partners" to the facts of this case and disregard Petitioner's broad and overly inclusive definition.

### D. The Court Should Disregard Petitioner's Request to Reweigh Evidence Regarding Commerce's Affiliation Analysis Under 19 U.S.C. § 1677(33)(G).

The Court should reject Petitioner's invitation to reweigh record evidence as it relates to Commerce's affiliation analysis under 19 U.S.C. § 1677(33)(G) because it is both outside the scope of the Court's request for supplemental briefing, and it is impermissible for the Court to re-evaluate the agency's factual determinations *de novo*. *See Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1379 (Fed. Cir. 2015) ("To the extent {Plaintiff} requests this court to reweigh Commerce's findings . . . , this court may not do so").

In arguing that Commerce's affiliation analysis was contrary to law, Petitioner reiterates its argument that Commerce failed to analyze the supplier's reliance on LDC Sucos in evaluating whether they are in a close supplier relationship under 19 U.S.C. § 1677(33)(G), and 19 C.F.R. § 351.102(b)(3). This is factually incorrect. Commerce did consider whether LDC Sucos was reliant on [   ] and whether [   ] was reliant on LDC Sucos, and determined they were not in a close supplier relationship because, "LDC had other sources for purchasing major inputs other than this particular supplier" and the "contractual terms between LDC and its supplier recognize the sovereignty of the parties and indicate no obligation toward each other beyond those spelled

6

out by the terms of the contract." *Final IDM* at 12 (citing DQR at Exhibit D3, D7; LDC Sucos's Response to Commerce's Supplemental Section D Questionnaire (June 3, 2022) at Exhibit Supp. D15 ("SDQR") (PR 155) (CR 159)). While Commerce, may not have written about every contractual term, "there is no statutory requirement that the Department explicitly discuss every piece of record evidence that is put before it in an investigation." *See Allegheny Ludlum Corp. v. United States*, 112 F. Supp. 2d 1141, 1165 (Ct. Int'l Trade 2000). Therefore, it complied with its regulations and did not depart from its past practice in this case. Petitioner is simply asking the Court to reweigh evidence in the case.

Further, Petitioner inaccurately argues that because LDC Sucos as a foreign company could not legally own land in Brazil, LDC Sucos was reliant on [     ] for its groves. Petr.'s Supp. Br. at 1, 6–7. However, record evidence demonstrates that the law restricting foreign ownership of land in Brazil was [                                                              ]. *See* Commerce Memorandum to File re: *Verification of the Cost Response of Louis Dreyfus Company Sucos S.A. in the Lower-Than-Fair-Value Investigation of Certain Lemon Juice from Brazil* (Oct. 21, 2022) at Exhibit CVE-8 (PR 259) (CR 295) ("Cost Verification Report"). LDC Sucos's financial statements demonstrate that LDC Sucos owns land in Brazil and also has similar lease agreements with other third parties. *See* LDC Sucos's Response to Section A of the Antidumping Duty Questionnaire (Mar. 14, 2022) at Exhibit A-13, at 9 (explaining that LDC Sucos is a company engaged in several activities including "performance of agricultural activities in subsidiaries' or third parties' plots of land, especially growing orange or other citrus fruits"), 43 (listing cost, depreciation, and residual for land assets) ("AQR") (PR 77) (CR 65-66). There is also no evidence on the record that [     ] does not own other groves in Brazil, or that it could not use its land for other purposes. It is well-established that Commerce is "presumed…to have

7

considered all pertinent information sought to be brought to its attention." *Nakajima All Co., Ltd. v. United States*, 744 F. Supp. 1168, 1175 (Ct. Int'l Trade 1990). Thus, Commerce properly considered these facts in making its determination, and the Court need not reconsider them.

### E. The Court Should Defer to Commerce's Application of Its Affiliated Persons Regulation In This Case 19 C.F.R. § 351.102(b)(3).

In conducting its affiliation analysis, Commerce properly applied its Affiliated Persons regulation, 19 C.F.R. § 351.102(b)(3). *Loper Bright* does not disturb the deference owed to an agency in interpreting its own regulations. Regarding Petitioner's arguments based in Commerce's interpretation of its Affiliated Persons' regulation rather than the statutory text, because Commerce's interpretation of 19 C.F.R. § 351.102(b)(3) as applied in this case was not plainly erroneous, the Court should defer to Commerce's interpretation.

"The Supreme Court has held that an agency's interpretation of its own regulations is entitled to substantial deference by the courts." *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017) (citing *Auer v. Robbins,* 519 U.S. 452, 461–62 (1997)). An administrative interpretation of a regulation has "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *see also Michaels Stores, Inc. v. United States*, 766 F.3d 1388, 1391 (Fed. Cir. 2014).

First, Petitioner argues that Commerce's interpretation of 19 C.F.R. § 351.102(b)(3) was erroneous because the regulation requires that Commerce consider a list of enumerated factors, "among others." Petr.'s Supp. Br. at 7. Petitioner says the relevant factors Commerce should have considered include "evidence of joint ownership and/or joint selling activities demonstrating that the parties were "partners" to be affiliated under (33)(C)," and other factors. Petr.'s Supp. Br. at 7. As an initial matter, Commerce did, in fact, consider these factors in its analysis under 19 U.S.C. § 1677(33)(C), and determined that LDC Sucos and [      ] were not "partners" in part because

8

"LDC and its supplier do not jointly own anything pursuant to the terms of their contract and do not engage in joint selling activities." *Final IDM* at 13 (citing LDC Sucos's Response to Commerce's Supplemental Section A Questionnaire (Apr. 8, 2022) at Supp. A-5 (PR 114) (CR 94) ("SAQR")). Moreover, while Commerce's regulation gives Commerce the freedom to consider "other factors" in its analysis of control with respect to affiliation, it logically does not *require* Commerce to do so, stating simply "In determining whether control over another person exists, . . . the Secretary will consider the following factors, among others . . . ." 19 C.F.R. § 351.102(3)(b). But, in any case, Commerce did consider "other factors" in its affiliation analysis under 19 U.S.C. § 1677(33)(C) and (G) including record evidence that the parties were in a "contractual relationship," the lack of non-arm's-length transactions between the parties, the "market-based" nature of their relationship, and the fact that LDC Sucos "described the supplier as a third party" and had "other supply options" meaning it was "not reliant" on [   ]. *Final IDM* at 12–13 (citing SAQR at Supp-A-5; DQR at Exhibit D3 and D7; SDQR at Exhibit Supp. D15; Commerce Memorandum to File re: *Verification of the Sales Questionnaire Response of Louis Dreyfus Company Sucos S.A. in the Antidumping Investigation of Certain Lemon Juice from Brazil* (Oct. 5, 2022) (PR 253) (CR 293) ("Sales Verification Report"); Cost Verification Report). The Court should defer to Commerce's application of the regulation in this case.

Second, Petitioner argues that Commerce's affiliation determination was contrary to the plain language of 19 C.F.R. § 351.102(b)(3) because Commerce failed to analyze [   ] reliance on LDC Sucos in evaluating whether the parties had a close supplier relationship under 19 U.S.C. § 1677(33)(G). Petr.'s Supp. Br. at 7–8. As previously explained, Commerce did consider whether either party was reliant on the other by reviewing the contract between the parties and determining that the "contractual terms between LDC and its supplier recognize the sovereignty

9

of the parties and indicate no obligation toward each other beyond those spelled out by the terms of the contract." *Final IDM* at 12 (citing DQR at Exhibit D3). Importantly, Petitioner did not point to any record evidence to the contrary that Commerce failed to consider. While Commerce did not discuss specific contractual provisions in its final determination, the Court should affirm Commerce's determination, so long as its decisional path was reasonably discernable. *See Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983). Further, given that *Loper Bright* has not altered the deference owed to agencies when interpreting their own regulations, the Court should defer to Commerce's application of its regulation here.

### III. CONCLUSION

For the foregoing reasons, LDC Sucos asks the Court to affirm Commerce's interpretation of 19 U.S.C. § 1677(33) as applied to the facts of this case and respectfully requests that the Court enter judgment in favor of Defendant and affirm Commerce's final determination as it is supported by substantial evidence and is otherwise in accordance with law.

Respectfully submitted,

/s/ Gregory J. Spak
Gregory J. Spak
Jessica E. Lynd
Cristina M. Cornejo

White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600
gspak@whitecase.com

*Counsel to Louis Dreyfus Company Sucos S.A.*

August 30, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The page length for LDC Sucos's Supplemental Response Brief, as computed by White & Case LLP's word processing system (Microsoft Word 2016), is 10 pages.

/s/ Gregory J. Spak
Gregory J. Spak