## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| VENTURA COASTAL, LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>      Defendant,<br><br>  and,<br><br>LOUIS DREYFUS COMPANY SUCOS S.A.,<br><br>      Defendant-<br>      Intervenor. | Before: Hon. Claire R. Kelly, Judge<br><br>Court No. 23-00009<br><br><br>**NON-CONFIDENTIAL VERSION** |

## COMMENTS IN OPPOSITION TO THE FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

Daniel B. Pickard
Claire M. Webster

Buchanan Ingersoll & Rooney PC
1700 K Street, NW
Washington, DC 20006
(202) 452-7000

*Counsel to Ventura Coastal, LLC*

Dated: March 27, 2025

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

    I.      Investigation ................................................................................................. 1

    II.    Court's Remand Opinion ............................................................................. 3

    III.   Commerce's Final Remand Results ............................................................. 4

SUMMARY OF THE ARGUMENT ................................................................................. 4

STANDARD OF REVIEW ................................................................................................ 5

ARGUMENT ..................................................................................................................... 7

    I.      Commerce's Affiliation Determination is Contrary to Law and Unsupported by Substantial Evidence ............................................................................... 7

        1.    Commerce's Finding of No Affiliation Between LDC and [       ] Based on a Close Supplier Relationship Is Contrary to Law and Not Supported by Substantial Evidence ............................................................ 7

        2.    Commerce's Finding that LDC and [     ] Are Not Partners Under 19 U.S.C. § 1677(33)(C) Is Contrary to Law and Not Supported by Substantial Evidence ........................................................ 18

CONCLUSION ................................................................................................................ 22

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
　419 U.S. 281 (1974)........................................................................................6

*Crawfish Processors Alliance v. United States*,
　477 F.3d 1375 (Fed. Cir. 2007)....................................................................12

*CS Wind Vietnam Co., Ltd. v. United States*,
　832 F.3d 1367 (Fed. Cir. 2016).......................................................................6

*Encino Motorcars, LLC v. Navarro*,
　579 U.S. 211 (2016)........................................................................................6

*Gerald Metals, Inc. v. United States*,
　132 F.3d 716 (Fed. Cir. 1997).........................................................................6

*Hontex Enterprises, Inc. v. United States*,
　342 F. Supp. 2d 1225 (Ct. Int'l Trade 2004) ........................................10, 11, 12, 17

*Mitsubishi Heavy Indus., Ltd. v. United States*,
　15 F. Supp. 2d 807 (Ct. Int'l Trade 1998) .....................................................13

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*,
　463 U.S. 29 (1983).........................................................................................6

*NLRB v. Columbian Enameling & Stamping Co.*,
　306 U.S. 292 (1939).......................................................................................5

*Tension Steel Indus. Co. v. United States*,
　179 F. Supp. 3d 1185 (Ct. Int'l Trade 2016) .................................................9

*TIJID vs. United States*, 366 F. Supp. 2d 1286, 1295-1300 ..............................8, 9

*Ventura Coastal, LLC v. United States*,
　736 F. Supp. 3d 1324 (Ct. Int'l Trade 2024) ................................................ *passim*

*Vicentin S.A.I.C. v. United States*,
　466 F. Supp. 3d 1227 (Ct. Int'l Trade 2020) .................................................6

*Xinjiamei Furniture (Zhangzhou) Co. v. United States*,
　968 F. Supp. 2d 1255 (Ct. Int'l Trade 2014) .................................................6

*Zhejiang DunAn Hetian Metal Co. v. United States*,
    652 F.3d 1333 (Fed. Cir. 2011) .................................................................5

**Statutes**

5 U.S.C. § 706(2)(A) ...................................................................................6

19 U.S.C. § 1516a(b)(1)(B)(i) ....................................................................5

19 U.S.C. § 1677(33) ...........................................................................12, 18

19 U.S.C. § 1677(33)(B) ...........................................................................13

19 U.S.C. § 1677(33)(C) .....................................................................3, 7, 18

19 U.S.C. § 1677(33)(E) ...........................................................................13

19 U.S.C. § 1677(33)(F) ...........................................................................13

19 U.S.C. § 1677(33)(G) ...............................................................3, 4, 7, 13

19 U.S.C. § 1677b(f)(3) ..............................................................................2

**Other Authorities**

19 C.F.R. § 351.102(b)(3) ...........................................................................9

*Antidumping Duties; Countervailing Duties,* 62 Fed. Reg. 27,296, 27,298 (Dep't
    Commerce May 19, 1997) *(final rule)* ...................................................11

*Certain Hot-Rolled Steel Flat Products from the Republic of Korea: Final Results
    of Antidumping Duty Administrative Review*; 2016-2017, 84 Fed. Reg. 32,720
    (Dep't Commerce July 9, 2019) ............................................................16

*Certain Lemon Juice From Brazil: Preliminary Affirmative Determination of
    Sales at Less Than Fair Value,* 87 Fed. Reg. 47,697 (Dep't of Commerce Aug.
    4, 2022) .........................................................................................1, 2, 3, 8

Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1 at 838 (1994) ......................9

## INTRODUCTION

In the Final Results of Redetermination Pursuant to Court Remand ("Final Remand Results"), the U.S. Department of Commerce ("Commerce") ignores and minimizes record evidence impermissibly.  *See* ECF-92-1.  Despite compelling record evidence showing (1) that Louis Dreyfus Company Sucos S.A. ("LDC") purchased lemons from its supplier, [

]; (2) that [


]; (3) that [

], and (4) that LDC is required [

], Commerce refuses to find that LDC and [       ] are affiliated parties based on a close supplier relationship.  Similarly, Commerce finds that LDC and [       ] are not affiliated as partners although they are engaged in a cooperative business endeavor involving the production and sale of lemons in which they share risks and rewards commensurate with their contributions to the partnership.  The upshot of the Final Remand Results is a skewed dumping margin containing a major input (lemons) of the subject merchandise (lemon juice) that LDC acquired from an affiliated party at below market prices.  Because the Final Remand Results contain a series of arbitrary and unsupported findings, the Court should remand anew.

## BACKGROUND

### I.    Investigation

On August 4, 2022, Commerce published its preliminary determination in the antidumping duty investigation of lemon juice from Brazil.  *Certain Lemon Juice from Brazil: Preliminary Affirmative Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 47,697 (Dep't of Commerce Aug. 4, 2022) ("*Preliminary Determination*"), and the accompanying Issues and Decision Memorandum ("IDM").  Relevant to this litigation, Commerce preliminarily determined

that mandatory respondent, LDC and its lemon supplier, [          ] were affiliated parties and that LDC's purchases of [          ] lemons should be adjusted in accordance with 19 U.S.C. § 1677b(f)(3). *See* Commerce Memorandum, re: *Antidumping Duty Investigation of Certain Lemon Juice from Brazil: Cost of Production and Constructed Value Calculation Adjustments for the Preliminary Determination – Louis Dreyfus Company Sucos S.A* (July 28, 2022) ("Preliminary COP and CV Memorandum") at 2.

Following the *Preliminary Determination*, Commerce verified LDC's cost response. *See, generally* Commerce Memorandum, re: *Verification of the Cost Response of Louis Dreyfus Company Sucos S.A. in the Less-Than-Fair-Value Investigation of Certain Lemon Juice from Brazil* ("Cost Verification Report"). At verification, Commerce "reviewed the listing of {} lemon fruit purchases LDC {} made from [          ] . . . and from unaffiliated suppliers" and "recalculated the average affiliated and average unaffiliated contract prices as follows: Reported transfer price {of affiliated purchases} [          ] BRL/box; Market price based on unaffiliated purchases [          ] BRL/box." *See* Cost Verification Report at 19. In other words, Commerce found that the prices of LDC's lemon purchases from [          ] and other affiliated parties were [          ] that the price of unaffiliated companies. *Id.*

In its case brief, Plaintiff argued that because lemons are a major input for producing lemon juice, Commerce's affiliation analysis should also include an analysis of the cost of production of lemons in accordance with the major input rule. *See* Petitioner's Case Brief, re: *Certain Lemon Juice from Brazil: Petitioner's Case Brief as to Louis Dreyfus Company Sucos S.A.* (November 2, 2022) at 6. Instead, in the *Final Determination*, Commerce reversed course "find{ing} that LDC and its supplier are not affiliated under any provision of the Act." I&D Memo at 11; *see also* Commerce Memorandum, re: *Antidumping Duty Investigation of Certain Lemon Juice from*

*Brazil: Cost of Production and Constructed Value Calculation Adjustments for the Final Determination – Louis Dreyfus Company Sucos S.A* (Dec. 19, 2022) at 1.  In finding no affiliation through a close supplier relationship under 19 U.S.C. §1677(33)(G), Commerce "agree{d} with LDC that when a buyer has other supply options, the buyer is not reliant on its supplier."  I&D Memo at 12.

Commerce also found that "LDC and {[         ]} are not affiliated as partners within the meaning of {19 U.S.C. §1677(33)(C)}," reasoning that "{r}ecord evidence supports that this is a contractual relationship" and "LDC and {[         ]} do not jointly own anything pursuant to the terms of their contract and do not engage in joint selling activities."  I&D Memo at 13.  As a result, Commerce concluded that neither the transactions disregarded rule nor the major input rule applied, and reversed the adjustment made in the *Preliminary Determination* to the cost of lemons that LDC purchased from [         ].  *See* I&D Memo at 13.

## II.    **Court's Remand Opinion**

In *Ventura Coastal, LLC v. United States,* 736 F. Supp. 3d 1324 (Ct. Int'l Trade 2024), the Court remanded Commerce's determinations that LDC and [         ] were not affiliated (1) based on a close supplier relationship under 19 U.S.C. § 1677(33)(G); or (2) as "Partners" under 19 U.S.C. § 1677(33)(C).

Regarding the existence of a close supplier relationship, the Court found that although "Commerce's reliance analysis . . . discusses the potential reliance of LDC on Supplier A, it fails to consider or acknowledge the supplier's reliance on LDC."  *Id.* at 1355.  The Court also found that "Commerce's statement that the parties have no obligation to each other beyond the contract is conclusory" and "offers no explanation for how the terms of the contract demonstrate a lack of Supplier A's reliance on LDC."  *Id.*  Finally, the Court found that Commerce "ignored evidence

that would suggest that, even with the availability of other suppliers, Supplier A may have been reliant upon the LDC." *Id.*

Turning to whether LDC and Supplier A are "Partners", the Court held that "Commerce's view of the word 'partners' as those who 'jointly own anything' or 'engage in joint selling activities,' . . . is helpful but inadequate." *Id.* The Court found that the "plain meaning of the word partners requires Commerce to analyze not only whether entities are involved in joint selling or joint ownership but also whether they more generally form a cooperative endeavor in which they share risk and reward." *Id.* Therefore, the Court instructed Commerce to "apply the definition {of Partners} articulated by the Court, namely whether LDC and Supplier A formed a cooperative endeavor in which they shared risk and reward." *Id.* at 1359-60.

## III.   Commerce's Final Remand Results

Following the release of draft remand results and comments from interested parties, Commerce submitted its Final Remand Results to the Court on February 14, 2025. Consistent with its *Final Determination*, Commerce "continues to find that LDC and Supplier A are not affiliated within the meaning of {19 U.S.C. § 1677(33)(G)} because LDC and Supplier A are not in a close supplier relationship, such that either is in control of the other within the meaning of the statute." Final Remand Results at 16. Commerce also found that LDC and Supplier A "are not affiliated as 'partners' within the meaning of {19 U.S.C. § 1677(33)(G)}, or in accordance with the Court's definition of 'partners'" because there is "insufficient record evidence that LDC and Supplier A have formed a 'cooperative endeavor' or that their relationship constitutes shared risk and reward beyond the contractual terms agreed to by the parties." *Id.* at 25.

## SUMMARY OF THE ARGUMENT

In the Final Remand Results, Commerce once again fails to reconcile its conclusions with substantial record evidence and the law. The Court should therefore remand anew.

4

With respect to whether LDC and [          ] are in a close supplier relationship, Commerce ignores compelling evidence showing that [          ] was reliant on LDC's purchases of lemons. As a result, Commerce fails to consider in the Final Remand Results whether the relationship between LDC and [          ] impacted the price of lemons that LDC purchased from [          ] — which was an affirmative finding that Commerce made in the *Preliminary Results*. As discussed further below, Commerce similarly fails to provide the reasoned analysis as required by law.

Regarding whether LDC and [          ] are affiliated as Partners, Commerce impermissibly minimizes substantial record evidence showing that LDC and [          ] have a cooperative business endeavor—involving the production and sale of lemons—in which they share risks and rewards. Additionally, while LDC and [          ] have the [

          ], this is common in many [          ] and does not undermine the validity of their [          ]. As demonstrated further below, Commerce's partnership analysis fails to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.

## STANDARD OF REVIEW

The Court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion{.}" *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939) (cleaned up); *accord Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1340 (Fed. Cir. 2011). The standard "requires more than mere assertion of evidence which in and of itself justified {the determination}, without

taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (cleaned up).

Under the Administrative Procedure Act, the Court may separately set aside a Commerce decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Commerce acts arbitrarily and therefore unlawfully when it fails to provide "a reasoned basis" for its choices. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974). Commerce has a reasoned basis for its choices when it provides an "A-to-Z explanation" grounded in "evidence-based factual findings." *CS Wind Vietnam Co., Ltd. v. United States*, 832 F.3d 1367, 1377 (Fed. Cir. 2016). Proffering "conclusory statements," however, will not do. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016). Instead, Commerce "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up).

Finally, the Court reviews Commerce's remand determinations "for compliance with the Court's remand order." *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (cleaned up). Commerce's failure to comport with the Court's remand order provides grounds for another remand. *See, e.g.*, *Vicentin S.A.I.C. v. United States*, 466 F. Supp. 3d 1227, 1245 (Ct. Int'l Trade 2020).

## ARGUMENT

**I.      Commerce's Affiliation Determination is Contrary to Law and Unsupported by Substantial Evidence**

Commerce's determinations that LDC and [      ] are not affiliated under subsections (C) or (G) of 19 U.S.C. § 1677(33) are contrary to law and are not supported by substantial evidence.

> **1.   Commerce's Finding of No Affiliation Between LDC and [      ] Based on a Close Supplier Relationship Is Contrary to Law and Not Supported by Substantial Evidence**

In the Final Remand Results, Commerce continues to find that "LDC and Supplier A are not affiliated within the meaning of {19 U.S.C. § 1677(33)(G)} because {they} are not in a close supplier relationship, such that either is in control of the other."  Final Remand Results at 16.  As explained below, Commerce's findings run counter to the law and record evidence.  We address each of them in turn.

First, according to Commerce, Plaintiff "seemingly misapprehends the *Remand Order*, {by} suggesting that the Court has already addressed whether Commerce must show more than the availability of other lemon purchasers to demonstrate that Supplier A is not reliant on LDC."  Final Remand Results at 17.  It is unclear what Commerce finds wrong about this statement or why it is inconsistent with the Court's *Remand Order*.  The Court explicitly stated that "{a}lthough Commerce determined that LDC had other supplier options, . . . it ignored evidence that would suggest that, even with the availability of other suppliers, Supplier A may have been reliant upon LDC."  *Ventura* 736 F. Supp. 3d at 1355.

In the Final Remand Results, Commerce ignores the Court's *Remand Order* and continues to rely heavily on the fact that there are other lemon suppliers in Brazil in concluding that [ ] is not reliant on LDC.  But, as explained below, substantial record evidence demonstrates that

(1) the [

] has created a situation where [        ] has become reliant on LDC's

purchases of lemons; and (2) [        ]'s reliance on LDC's purchases of lemons has impacted the

price of lemons—which Commerce found in the *Preliminary Determination*.  *See* Preliminary

COP and CV Memorandum at 2; *see also* Final Remand Results at 23-25.  Simply put, the

existence of potential other sources is a part of the analysis, it is not – as Commerce appears to

believe – the entirety of the close supplier test.

Second, Commerce states that a "finding of reliance must be predicated on more than just

mere contractual terms agreed to by parties, even if either party exclusively contracts with the

other."  Final Remand Results at 18.  As a logical matter, reliance and control certainly could be

established by contractual terms.  However, and importantly, while Commerce references cases

that may support this proposition on a surface level, they are not analogous to the facts at bar, in

effect the reality of the close supplier relationship of LDC and [        ].  Specifically, Commerce

references *TIJID vs. United States* where the Court held that "even if a supplier sells 100 percent

of its exports to a single distributor, that fact alone does not establish a finding of a close supplier

relationship."  Final Remand Results at 18 (citing *TIJID vs. United States*, 366 F. Supp. 2d 1286,

1295-1300 (Ct. Int'l Trade 2005)).

The facts in *TIJID*, however, are distinguishable from the underlying investigation.  In

*TIJID*, Commerce found that although Chinese exporter and producer, Fay Candle may have sold

100 percent of its exports to U.S. importer, that there was still no close supplier relationship.  In

TIJID, there was no evidence regarding a requirement to sell all its subject merchandise to a

specific company, nor was there any exclusive selling arrangement between the parties.  *TIJID*,

366 F. Supp. 2d at 1299.  Instead, the primary basis that TIJID argued it possessed a close supplier

relationship with Fay Candle was the "close brotherly" relationship between by Mr. Saull—the principal of TIJID—and Fay Candle's CEO.  *Id.*  Without any record evidence to support the close supplier relationship, the Court found that Commerce reasonably concluded that Fay Candle was not required to only sell subject merchandise to TIJID.  *Id.*

Here the relationship between the parties is far more than a "close brotherly" relationship. Indeed, when determining whether parties are affiliated through a close supplier relationship, Commerce analyzes whether "the buyer or supplier has become reliant on the other."  *Tension Steel Indus. Co. v. United States*, 179 F. Supp. 3d 1185, 119 (Ct. Int'l Trade 2016) (citing Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1 at 838 (1994) ("SAA")).  If the record indicates that one or more parties is reliant on the other, Commerce then considers whether the parties' relationship has "the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise or foreign like product."  19 C.F.R. § 351.102(b)(3); *see also TIJID*, 366 F. Supp. 2d at 1299.  Finally, in determining whether parties are affiliated through a close supplier relationship, "{Commerce} will consider the temporal aspect of a relationship in determining whether control exists." 19 C.F.R. § 351.102(b)(3).

Unlike the facts in *TIJID,* the [                                        ] between LDC and [          ] (1) contains terms which specify that [



].  *See* Letter from White & Case LLP, to Sec'y Commerce, re: *Certain Lemon Juice from Brazil: Response to Section D of the Antidumping Duty Questionnaire* (Apr. 11, 2022) ("LDC Section D QR") at Exhibit D3.  In other

words, pursuant to the [                                    ], it is obligatory (rather than

optional) for [

                                    ].  *Id.*  Moreover, the relationship between the parties is

[

              ].  *See* LDC Section D QR at Exhibit D3.  Indeed, the arrangement of the companies

is reflective of a [


              ].  Apart from the mutual reliance of the parties, in the *Preliminary Results*, Commerce

found that the prices of LDC's lemon purchases from [          ] and other affiliated parties were

[          ] that the prices of unaffiliated companies.  *See* Cost Verification Report at 19.  These

facts demonstrate that [          ] has become reliant on LDC's purchases of lemons, and that such

reliance has impacted the price of the lemons that LDC purchases from [          ].  *Id.*

     Similar to *TIJID*, Commerce's reference to *Hontex Enterprises, Inc. v. United States*, 342

F. Supp. 2d 1225 (Ct. Int'l Trade 2004) is misplaced.  In particular, *Hontex* involves the following

parties: (1) Ningbo Nanlian Frozen Foods Company ("NNL") and Huaiyin Foreign Trade

Corporation (5) ("HFTC5")—exporters of crawfish from China; (2) Company A—a supplier of

crawfish; and (3) Company B—an importer of crawfish.  *Id.* at 1242.  Company A and Company

B jointly owned NNL and were NNL's exclusive supplier and importer of crawfish in the United

States in 1998.  *Id.*  The Court affirmed Commerce's finding that Company A and Company B had

the potential to impact the business decisions of NNL.  *Id.*

     In contrast, because Company A did not supply any crawfish to HFTC5, and Company B

did not sell any crawfish on behalf of HFTC5 in 1998, the Court found that there was no evidence

that HFTC5 had any difficulty obtaining crawfish from other suppliers in 1998—the year in which

Company A sent all of its output to NNL.  *Id.* at 1242-43.  Therefore, the Court found that it was "difficult to see how Company A could be in a position to control HFTC5 in 1998, when it sold none of its product to HFTC5 in that year."  *Id.*  Unlike *Hontex*, [


].  *See* LDC Section D QR at Exhibit D3.In other words, the facts demonstrate not only that [

].  Commerce's failure to grapple with this specific distinction amounts to legal error and warrants a remand.  Commerce's requirement for the existence of some type of "undue influence" is not supported by law.

Third, Commerce states that because LDC and [

], the inquiry should be focused on whether, when the parties were negotiating sales terms, was either party in a position of reliance on the other and thus subject to the exertion of undue influence by the other."  Final Remand Results at 18.  Contrary to Commerce's assertions, it fails to cite any cases which support the conclusion that a party must be "subject to the exertion of undue influence" at the time of negotiating the sales terms of an agreement for a close supplier relationship to exist.  In fact, Commerce's regulations and case precedent support the opposite conclusion in that a supplier or buyer may become reliant after the parties enter an agreement. Specifically, when promulgating its regulations governing the agency's temporal determination, Commerce stated:

> {T}he Department normally will not consider firms to be affiliated where the evidence of "control" is limited, for example, to a two-month contract.  On the other hand, the Department cannot rule out the possibility that a short-term relationship <u>could result in control</u>. Therefore, the Department will consider the temporal aspect of a relationship as one factor to consider in determining whether control exists.

*Antidumping Duties; Countervailing Duties,* 62 Fed. Reg. 27,296, 27,298 (Dep't Commerce May 19, 1997) *(final rule)* ("*Final Rule*") (emphasis added).  In *Hontex,* the Court stated that it understood the regulations to mean that "Commerce *must weigh the nature of entities' contacts over time*, and must determine how such contacts potentially impact each entity's business decisions." *Hontex Enters.,* 248, F. Supp. 2d 1350 n17.  (emphasis added).  Thus, Commerce's regulations—and the Court's interpretation of them—support the conclusion that a buyer or seller does not have be "subject to the exertion of undue influence" at the time of entering an agreement for Commerce to find that control exists.  *Id.*  Here, LDC and

[


].  *See* LDC Section D QR at Exhibit D3.  Moreover, as explained below, even after [

]—which supports a finding of mutual reliance by the parties.  Commerce's apparent

[                                                                                    ] in order to find a close supplier relationship (like its "undue influence" requirement) constitutes legal error in imposing requirements that go beyond the statute's plain language.

Fourth, Commerce acknowledges "that shared ownership or management is {not} a requirement to demonstrate reliance and/or control under Commerce's close supplier relationship analysis", but states that "such facts are relevant to analyze . . . whether LDC or {[      ]} is reliant on the other or in a position to exert control over the other."  *Id.*  Contrary to Commerce's findings, the Court has repeatedly affirmed that Commerce's actions are unlawful when they go beyond the plain meaning of the relationships set forth in 19 U.S.C. § 1677(33) to find no affiliation between two parties.  For example, in *Crawfish Processors Alliance v. United States*, 477 F.3d

1375, 1380-81 (Fed. Cir. 2007), the Court held that it was legal error for Commerce to impose requirements beyond the statute's plain language in determining whether affiliation existed within the meaning of 19 U.S.C. § 1677(33)(E).  Similarly, in *Mitsubishi Heavy Indus., Ltd. v. United States*, 15 F. Supp. 2d 807, 832 (Ct. Int'l Trade 1998), this Court held that Commerce's affiliation analysis was erroneous because it imposed an evidentiary burden greater than the requirements of the statute.  While LDC and [                                    ] — factors that appear more relevant to affiliation analyses under subsections (B), (E), and (F) of 19 U.S.C. § 1677(33)—the record evidence shows that [          ] has become reliant on LDC's purchases of lemons.  For [                    ] has been [

                                                    ].  And, as explained above, the relationship between the parties is [

                                ].  *See* LDC Section D QR at Exhibit D3.

Fifth, Commerce repeats its finding from the *Final Determination* that "there are [

                                ], and there is no record evidence indicating that . . . [

                                                ] through reliance on LDC."  Final Remand Results at 19.  Simply put, even close supplier relationships can have the [

                        ].  But, here, LDC and [            ] have never [                            ], which further supports the existence of a close supplier relationship between the parties.

Additionally, despite the [                            ] their partnership, the [

] of LDC and [                ] ongoing relationship supports a finding of reliance under 19 U.S.C. § 1677(33)(G) due to the repeated business transactions and [                                ] between LDC

and Supplier A.  In the Final Remand Results, Commerce simply states that it "considered the

[                    ] of the relationship between LDC and Supplier {A} and, [

                ] . . . the totality of the record evidence . . . support{s} a finding of no affiliation."

Final Remand Results at 22.  Commerce's failure to meaningfully address the significance of the

[

            ] renders the Final Remand Results not supported by substantial evidence.  In essence,

Commerce states a conclusion without an analysis of the long-term relationship between the

parties.

Sixth, Commerce asserts that Plaintiff "attempts to amplify the impact of the Agreement

on LDC's and Supplier A's relationship by equating the present case with *OCTG from Korea*."

Final Remand Results at 19.  Commerce states that the "high level of integration in *OCTG from

Korea* between the supplier and the purchaser is different from the relationship between LDC and

Supplier A." Final Remand Results at 20.  In reaching this determination, Commerce block quotes

language from its *Final Determination* in *OCTG from Korea.*   For the Court's convenience,

Plaintiff responds to each section of the block quote:

- **The affiliation between {the respondent, NEXTEEL} and {the steel coil supplier, POSCO} extends beyond the companies' close supplier relationship. For example, POSCO has assigned employees to monitor NEXTEEL's inventory of hot-rolled coil to ensure that the company is supplied with POSCO-produced steel.**

    o    LDC [

                        ]. *See* LDC Section D QR at Exhibit D3.

- **Similarly, POSCO employees oversee "the shipping of finished products" from NEXTEEL's plant.**

    o    There is [

                                ]. *See* LDC

Section D QR at Exhibit D3.And all of this activity by LDC [
].

- **In addition, POSCO itself has publicly advertised that it "took charge of NEXTEEL's overseas {public relations} campaign" by providing NEXTEEL with marketing assistance, research and development capacity, and management consulting.**

  o The reliance between LDC and [          ] is even greater than a public relations campaign as [

    ]. *See* LDC Section D QR at Exhibit D3.

- **Moreover, {the petitioner in that case, U.S. Steel,} notes that NEXTEEL also depends on POSCO for its sales operations and certain other production operations.**

  o [          ] is reliant on LDC for its sales operations.  As stated above, [
            ] sold lemons to LDC during the period of investigation.  *See* Letter from White & Case LLP, to Sec'y Commerce, re: *Certain lemon Juice from Brazil: Response to the Supplemental Section D of the Antidumping Duty Questionnaire* (June 3, 2022) at Supp. D-1-3, Supp. D-5, Supp. D-8, Supp. D-17-18, ("LDC Suppl. Section D QR").

- **As such, U.S. Steel notes that NEXTEEL is clearly reliant on POSCO, which is in a position to control NEXTEEL in a manner that affects the pricing, production, and sale of NEXTEEL's OCTG.**

  o [          ] is also clearly reliant on LDC's purchase of lemons.  Specifically, [

    ]. *See* LDC Section D QR at Exhibit D3.

As shown above, while LDC's and [          ] relationship is not identical to NEXTEEL's and POSCO's relationship, LDC's [

          ] has created a unique situation where LDC is operationally in a position to exercise control over [          ] in a manner that affects the pricing of a major input of the subject

merchandise.  Indeed, even Commerce has found that LDC purchased lemons from [        ] at prices [          ] the price that it purchased lemons from unaffiliated suppliers.  *See* Cost Verification Report at 19.

Seventh, Commerce states that the "terms of the Agreement do not [



]."  Final Remand Results at 21.  In the Final Remand Results, Commerce attempts to raise the standard for finding a close supplier relationship by requiring the relationship to (1) impact the business ventures of a company outside of the relationship and (2) foreclose parties from being able to [

].  This standard, however, is not supported by the statute, regulations, or case precedent.  The key inquiry—as Commerce states in the Final Remand Results—is whether the "relationship is significant and could not be easily replaced."  Final Remand Results at 5 (citing *Certain Hot-Rolled Steel Flat Products from the Republic of Korea: Final Results of Antidumping Duty Administrative Review*; 2016-2017, 84 Fed. Reg. 32,720 (Dep't Commerce July 9, 2019), and accompanying IDM at Comment 2).  By any standard, LDC and Supplier A's relationship is significant and cannot be easily replaced.  The [



].  Finally, the standard for finding a close supplier relationship is not whether the relationship <u>can be</u> replaced (i.e., [              ]), but whether it <u>can be easily replaced</u>.  Put simply, Commerce has applied the wrong legal standard.

Eighth, Commerce concludes that "the fact that LDC and Supplier A [

] . . . contradicts {Plaintiff}'s

16

conclusion that either LDC or Supplier A are reliant upon the other." Final Remand Results at 21. Commerce also assets that "[                    ] seemingly indicates that the parties are operating independently, at arms-length, and willing to [

].'' Final Remand Results at 22. Commerce appears to be stating that a close supplier relationship cannot ever [                    ]. This is erroneous. But more than that, despite Commerce's claims, that fact that the parties [

] can easily replace its [          ] with LDC. The reality is that the record [                    ] demonstrates a [

], with [

].

Ninth, Commerce disagrees with Plaintiff's claim that "the [          ] temporal aspect of the relationship between LDC and Supplier A, coupled with the . . . conclusion that the Agreement impacts the price of subject merchandise, supports a finding of affiliation." Final Remand Results at 22. Commerce states that "the regulation and relevant case law cited by the petitioner in this argument focus on situations where temporary circumstances detract from a finding of affiliation, not [                    ] necessarily support or are dispositive of affiliation." *Id.* However, if the [               ] of a contract distracts from a finding of affiliation, the reverse side of the coin must be that the [               ] of a relationship, coupled with other facts, may support a finding of affiliation. As the Court stated in *Hontex*, "Commerce <u>must weigh the nature of entities' contacts over time</u>, and must determine how such contacts potentially impact each entity's business decisions." *Hontex Enters.,* 248, F. Supp. 2d at

1350 n.17.  (emphasis added).  If Commerce believes that a [                    ] is one that

can be easily replaced, it must provide a meaningful analysis of its determination.

     Finally, Commerce spends nearly two pages acknowledging that (1) it found that LDC and

[      ] were affiliated in the *Preliminary Results* of the investigation and (2) the purchase price

that LDC paid for lemons from Supplier A (and affiliated lemon suppliers) [

                  ].  *See* Final Remand Results at 23-25.  Commerce, however, states that the price

LDC paid for lemons from [         ] is not a factor in its affiliation analysis and that its "arm's-

length analysis is only conducted *after* an affirmative determination of affiliation between a

respondent and a supplier."  Final Remand Results at 24.

     Plaintiff's references to the [                        ] of lemons that LDC purchased from

Supplier A was not to argue that it demonstrates, by itself, that the parties are affiliated.  Instead,

Plaintiff presented this information in accordance with Commerce's practice of not finding

"affiliation based on a close supplier relationship unless the relationship has the potential to affect

decisions concerning the production, pricing, or cost of the subject merchandise or foreign like

product."  Final Remand Results at 5.  Here, as Commerce found in the *Preliminary Results,* the

close supplier relationship between LDC and [         ] impacted the price of lemons—a major

input of the foreign like product.  *See* Cost Verification Report at 19.

     **2.  Commerce's Finding that LDC and [         ] Are Not Partners Under 19
         U.S.C. § 1677(33)(C) Is Contrary to Law and Not Supported by Substantial
         Evidence**

     In the Final Remand Results, Commerce "continue{s} to find that LDC and Supplier A are

not affiliated as 'partners' within the meaning of {19 U.S.C. § 1677(33)}, or in accordance with

the Court's definition of 'partners' as parties who 'more generally form a cooperative endeavor in

which they share risk and reward.'"  Final Remand Results at 25.  In reaching this determination,

Commerce provides insufficient analysis and explanation, and therefore the Final Remand Results

are not in accordance with law.  As a result, the Court should remand Commerce's determination anew.

First, Commerce spends a considerable amount of time stating that Plaintiff argued that "LDC's usage of the term 'partnership' to describe its relationship with Supplier A to be dispositive that the exact nature of the relationship satisfies the statute."  Final Remand Results at 26.  This is not correct.  Although Plaintiff stated that "the underlying agreement between the LDC and [        ] is explicitly referred to as a [                         ]," Plaintiff also stated: "and this is exactly what the underlying commercial documents show."  *See* Plaintiff's Draft Remand Comments at 16.  Moreover, this statement was important given Commerce's limited view of "partners" as those who "share any joint selling activities or joint ownership." *See* Draft Remand Results at 15.  Commerce has essentially created a straw man by mischaracterizing Plaintiff's argument to be the fact that [                                        ] is in and of itself dispositive (an argument that was not in fact made).  While the [


                                    ]. Similarly, an agreement that is entitled an [                           ] could be relevant (but not necessarily dispositive) to the question of [

        ].  Commerce's failure to provide a reasoned analysis as to this issue is further ground for remand.

Second, Commerce clarifies in the Final Remand Results that it "is not establishing as a requirement that in all cases parties hold themselves out publicly as an association" or "that the parties jointly own anything."  Final Remand Results at 26.  After making this clarification, Commerce does an about-face and states that "these factors are relevant in evaluating whether a

partnership exists, and that here such factors weigh in favor of concluding that the parties are not partners within the meaning of section 771(33)(C) of the Act." *Id.* at 26-27.

Contrary to Commerce's assertions, public announcement and joint ownership are not requirements for a partnership. As the Court stated in its *Remand Order*, "{d}ictionary definitions suggest a broad view of partners." *Ventura*, 736 F. Supp. 3d at 1358. For example, "Merriam-Webster provides multiple definitions, including 'one associated with another especially in action,' and 'a member of a partnership especially in business.'" *Id.* "The definitions also suggest that the cooperative endeavor is itself an entity or association." *Id.* LDC's and Supplier A's cooperative business endeavor involving the production and sale of lemons meets the definition of a partnership. As explained above, [



]. This is a cooperative endeavor. The fact that Commerce appears to require in deed – if not in its words – that the parties hold themselves out publicly as a partnership – again creates an obligation that goes beyond the plain language of the statute.

Third, Commerce contends that a partnership does not exist between the parties because "Supplier A's actions outside of the terms of the Agreement cannot [

]." Stated differently, Commerce finds that "if LDC or Supplier A achieve success or experience hardship in areas unrelated to the contract there is no record evidence that either party would have some sort of interest in such occurrence as long as they perform the terms of the contract." Final Remand Results at 27-28.

Despite Commerce's claims, the Court's definition of the word partners does not require LDC and [          ] to "share{} risk or reward <u>beyond</u> the terms of the Agreement." Final Remand Results at 27-28. Many partnerships limit risks and rewards to the business endeavor that brought the parties together. For instance, if a business partner experiences medical issues or makes a bad investment, neither of these items should impact its business partners unless specified in their partnership contract. The same is true for LDC's and [          ] partnership. If LDC upholds its end of the partnership, [          ] is rewarded in the [


                                        ]. In turn, LDC benefits by [



                                                                                                                    ].

Moreover, as stated above, LDC's and [

                                                                                        ]. Indeed, and this bears

emphasizing, both parties share a mutual interest in the [

                        ]. Accordingly, LDC and [          ] meet the definition of "partners" in that they are engaged in a cooperative endeavor in which they share risk and reward — even if not equally, which is not required under the Court's definition of partners.

Finally, Commerce states that "the specific contractual clauses in the Agreement . . . providing for [                                        ] as well as the fact that parties [

                                        ] . . . ultimately weigh in favor of concluding that this contractual relationship is one between two independent parties and not partners who have entered into a cooperative business endeavor sharing risk and reward." Final Remand Results at 28-29. Contrary to Commerce's claims, many partnerships [

].  This is the reason why partnership agreements have clearly defined obligations that can be enforced legally.  The fact that the parties [


].  As such, Commerce's arguments regarding [                    ] —including the ones in its draft remand results—are not logical and must fail.

## <u>CONCLUSION</u>

For the reasons, Plaintiff respectfully requests that the Court vacate the Final Remand Results and remand anew to Commerce for further proceedings consistent with the Court's order and opinion in this matter.

Respectfully submitted,

By: */s/ Daniel B. Pickard*
Daniel B. Pickard, Esq.
Claire M. Webster, Esq.

**BUCHANAN INGERSOLL & ROONEY PC**
*Counsel to Ventura Coastal, LLC*