23-00009
_____

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
_____

VENTURA COASTAL, LLC,
                                    Plaintiff,

                    v.

UNITED STATES,
                                    Defendant

                    and

LOUIS DREYFUS COMPANY SUCOS S.A,
                                    Defendant-Intervenor.
_____

DEFENDANT'S REPLY TO COMMENTS ON REMAND REDETERMINATION
_____

                              Respectfully submitted,

                              YAAKOV M. ROTH
                              Acting Assistant Attorney General

                              PATRICIA M. McCARTHY
                              Director

                              TARA K. HOGAN
                              Assistant Director

OF COUNSEL

JONZACHARY FORBES             ANNE M. DELMARE
U.S. Department of Commerce   Trial Attorney
Office of Chief Counsel for   Commercial Litigation Branch,
Trade Enforcement and Compliance   Civil Division
1401 Constitution Avenue, NW   P.O. Box 480, Ben Franklin Station
Washington, DC 20230-0001     Washington, DC  20044
Telephone: (240) 449-5906     Telephone: (202) 305-0531
Email: JonZachary.Forbes@trade.gov   E-mail: Anne.M.Delmare@usdoj.gov

  May 2, 2025                 *Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ............................................................................................................... 1

    I.   The Administrative Determination Under Review ....................................... 1

    II.  The Court's November 7, 2024 Remand Order ........................................... 2

    III. Commerce's Remand Result .................................................................... 3

ARGUMENT ................................................................................................................... 5

    I.   Standard Of Review ............................................................................... 5

    II.  Commerce's Remand Results Are Supported By Substantial Evidence And In Accordance With Law ........................................................................... 5

        A.   Commerce's Determination That There Is No Close Supplier Relationship Is Supported By Substantial Evidence ....................... 6

        B.   Commerce's Determination That The Companies Are Not Partners Is Supported By Substantial Evidence And In Accordance With Law ....... 12

CONCLUSION .............................................................................................................. 15

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                     **PAGE(S)**

*Hontex Enterprises, Inc. v. United States*,
    342 F. Supp. 2d 1225 (Ct. Int'l Trade 2004) ................................................. 8, 9

*Loper Bright v. Raimondo*,
    144 S. Ct. 2244 (2024) ...................................................................................... 3

*MacLean-Fogg Co. v. United States*,
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) .................................................... 5

*Tension Steel Indus. Co., Ltd. v. United States*,
    179 F. Supp. 3d 1185 (Ct. Int'l Trade 2016) .................................................... 7

*Usinor v. United States*,
    342 F. Supp. 2d 1267 (Ct. Int'l Trade 2004) .................................................. 15

*Ventura Coastal, LLC v. United States*,
    736 F. Supp. 3d 1324 (Ct. Int'l Trade 2024) .................................................... 2

**STATUTES**

19 U.S.C. § 1677 .................................................................................... *passim*

**REGULATIONS**

19 C.F.R. § 351.102 ....................................................................................... 4

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |  |
|---|---|---|
| VENTURA COASTAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PUBLIC VERSION** |
| | ) | |
| v. | ) | **Court No. 23-00009** |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LOUIS DREYFUS COMPANY SUCOS, S.A., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

**DEFENDANT'S REPLY TO COMMENTS ON REMAND REDETERMINATION**

Defendant, the United States, respectfully submits these comments in reply to the comments of plaintiff, Ventura Coastal, LLC (Ventura), on the final remand redetermination filed by the Department of Commerce in accordance with this Court's November 7, 2024 Remand Order and Opinion, ECF No. 84, 89, *Ventura Coastal, LLC v. United States*, 736 F. Supp. 3d 1342 (Ct. Int'l Trade 2024), Slip Op 24-125 (Remand Order).  For the reasons set forth below, we respectfully request that the Court sustain Commerce's remand results and enter final judgment in favor of the United States.

## BACKGROUND

**I.     The Administrative Determination Under Review**

The administrative determination under review is Commerce's final affirmative determination issued in the less-than-fair-value (LTFV) investigation on certain lemon juice

from Brazil. *See Certain Lemon Juice From Brazil: Final Affirmative Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 78,939 (Dep't of Commerce Dec. 23, 2022) (P.R. 301), and accompanying Issues and Decision Memorandum (IDM) (P.R. 294).[1]  The period of investigation is October 1, 2020, through September 30, 2021.

## II.    The Court's November 7, 2024 Remand Order

On November 7, 2024, the Court sustained in part and remanded in part the final determination in the less-than-fair-value investigation of lemon juice from Brazil. *Ventura Coastal, LLC v. United States*, 736 F. Supp. 3d 1324 (Ct. Int'l Trade 2024) (*Remand Order*).

In the final determination, Commerce had considered whether Louis Dreyfus Company Sucos, S.A. (LDC), one of the mandatory respondents in the investigation, and its lemon supplier, [       ] ("Supplier A"), were affiliated under 19 U.S.C. § 1677(33)(C), whether they were "partners" under 19 U.S.C. § 1677(33)(G), and whether they "controlled" one another under a close supplier relationship analysis.  Commerce found that under 19 U.S.C. § 1677(33)(C), the parties were simply in a contractual relationship and that LDC and its supplier do not jointly own anything pursuant to the terms of their contract and do not engage in joint selling activities and therefore were not "partners." *See* IDM at 13.  Furthermore, under 19 U.S.C. § 1677(33)(G), Commerce found that LDC had other supplier options and the contractual terms between LDC and its supplier recognized the sovereignty of the parties and indicated no obligation toward each other beyond those spelled out by the terms of the contract.  Commerce therefore concluded that there was no close supplier relationship.  IDM at 12.

---

[1] For ease of reference, the record citations refer to documents filed under the antidumping duty case number, A-570-073 with P.R./C.R. designating citation to the initially filed administrative record index, *see* ECF No. 25, and P.R.R./C.R.R. designating citation to the remand record index. *See* ECF No. 94.

The Court remanded for further explanation or reconsideration of Commerce's

determination that is not affiliated with its supplier [        ].  The Court disagreed that Congress

had expressly delegated to Commerce the authority to interpret the statutory term "partners."

Remand Order at 25 (citing *Loper Bright v. Raimondo,* 144 S. Ct. 2244, 2263 (2024)).  Instead,

the Court considered dictionary sources in determining the plain meaning of the term "partner,"

Remand Order at 26-27, and concluded that parties are "partners" if the parties are part of a

"cooperative business endeavor in which they shared risk and reward."  Remand Order at 29.

The Court remanded for Commerce to consider whether "LDC and Supplier A formed a

cooperative business endeavor in which they shared risk and reward."  *Id*.

        The Court also remanded Commerce's close supplier relationship analysis under 19

U.S.C. § 1677(33)(G).  Remand Order at 21.  The Court found that Commerce had not

considered record evidence suggesting that "even with the availability of other suppliers,

Supplier A may have been reliant upon the LDC."  *Id*.  The Court thus remanded for Commerce

to consider "whether LDC controlled its supplier through Supplier A's reliance on LDC."  *Id.*

Accordingly, the Court remanded for further explanation or reconsideration.  Remand Order at

39.

## III.    Commerce's Remand Results

        In its remand results, Commerce provided further explanation and continued to find that

LDC and its supplier were not affiliated for purposes of the statute, consistent with the Court's

remand order.  ECF No. 92 (Remand Results).  Commerce further evaluated the nature of the

relationship between LDC and its supplier and found various factual reasons for why the parties

were not in a close supplier relationship under 19 U.S.C. § 1677(33)(G).  First, Commerce

continued to find that the parties do not share any common ownership nor is there evidence indicating shared management or staff.  Remand Results at 5.

Commerce additionally analyzed specific terms of the contractual agreement between the parties.  This includes the fact that either party could [

] or [                                        ] of the agreement.  Remand Results at 6-7.  Based on those terms, as well as a finding that there are several other lemon juice producers in Brazil that the supplier could contract with, Commerce concluded that there was not a close supplier relationship.  Remand Results at 6-8.

Commerce also stated that a showing of reliance is only the threshold question for finding a close supplier relationship, and that parties must also show that one of the companies is in a position to exercise restraint or direction over the other.  Remand Results at 8.  Commerce found that there was no record evidence that either LDC or its supplier were able to dictate sales terms, management or operating procedures, or production and purchase decisions to the other, or otherwise had the ability to control or exert undue pricing influence over the other.  Remand Results at 8-9.  Accordingly, Commerce continued to find that the parties were not affiliated under 19 U.S.C. § 1677(33)(G).

On remand, Commerce also continued to find that LDC and its supplier were not partners within the meaning of 19 U.S.C. § 1677(33)(C).  Commerce found that the parties were not engaged in a cooperative business endeavor in which they shared risk and reward.  Remand Results at 10.  First, Commerce analyzed whether the parties were part of a cooperative business endeavor.  Remand Results at 11.  Commerce found that there was no record evidence that either party held itself out to be associated with the other and that the parties were merely in a contractual relationship, such that there was no "cooperative" business endeavor.  *Id*.  Commerce

continued to stress that assent to contractual terms, no matter their complexity, does not necessarily establish a partnership. *Id*.

Commerce also concluded that there is no shared risk and reward in the contractual agreement between LDC and its supplier. *Id. To* the contrary, the contractual terms actually produce opposing risks and rewards for the parties wherein one party may benefit at the expense of the other depending on certain conditions. Remand Results at 12. Commerce further explained how the specific contractual provisions between LDC and its supplier were not indicative of *shared* rewards. Remand Results at 12-15. Commerce explained that there is no indication of shared risk and reward between the parties, even outside of the agreement, such that either party would be motivated to not independently assess and negotiate the initial contractual terms. Remand Results at 15. Commerce found that at the time of the negotiation of pricing terms neither party would be motivated by undue pricing pressures and there was no indication that the parties would not act as independent market participants. *Id*. Accordingly, Commerce continued to find that the parties were not affiliated under 19 U.S.C. § 1677(33)(C).

## ARGUMENT

### I.   Standard Of Review

In remand proceedings, the Court will sustain Commerce's determination if it is "in accordance with the remand order," and are "supported by substantial evidence and otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

### II.   Commerce's Remand Results Are Supported By Substantial Evidence And In Accordance With Law

Commerce's continued finding of no affiliation between LDC and its supplier was in accordance with the remand order, supported by substantial evidence, and in accordance with

law.  Commerce carefully evaluated the nature of the relationship between LDC and its supplier and the terms of their contractual agreement, weighing all relevant facts, consistent with the statute and the remand order.  Accordingly, this Court should sustain the remand results.

### A.  Commerce's Determination That There Is No Close Supplier Relationship Is Supported by Substantial Evidence

Commerce's determination that LDC and its supplier are not affiliated under 19 U.S.C. § 1677(33)(G) is supported by substantial evidence.  Ventura's arguments to the contrary either asks this Court to reweigh record evidence or misapprehend Commerce's conclusions as establishing necessary tests, rather than due evaluation and weighing of record evidence.

First, Ventura argues that the Court has already evaluated Commerce's determination that the existence of multiple lemon *purchasers* in the Brazilian market weighs against a finding that the *supplier* is reliant on LDC.  ECF No. 97 at 7 (Ventura Comments).  However, Commerce never made this finding in the original final determination.  Instead, Commerce concluded that multiple lemon *suppliers* existed in the Brazilian market and that fact weighs against a finding that *LDC* is reliant on the supplier.  IDM at 12.  Rather, the Court found that, "{a}lthough Commerce determined that LDC had other supplier options. . . it ignored evidence that would suggest that, even with the availability of other suppliers, Supplier A may have been reliant upon LDC."  Remand Order at 21.

Commerce interpreted this portion of the opinion as finding Commerce's error to be only evaluating the existence of other *suppliers* and not evaluating other evidence specific to whether Supplier A was reliant on LDC, rather than just whether LDC was reliant on Supplier A.  While the Court identifies that Commerce failed to adequately consider whether the supplier was reliant on LDC, the Court did not disturb Commerce's finding that the existence of other suppliers in the Brazilian market is a relevant factor that supports a finding that LDC is not reliant on its

6

supplier.  *See e.g., Tension Steel Indus. Co., Ltd. v. United States*, 179 F. Supp. 3d 1185, 1199 (Ct. Int'l Trade 2016) ("Commerce determined that, although these advantages led Tension to purchase a large share of its coil during the POI from Company A, they did not establish the absence of commercially viable alternative suppliers or that Tension would fail if forced to look to other suppliers. . . . Company A's role as Tension's predominate coil supplier . . .—did not suffice to affiliate Tension and Company A.").  Further, while Ventura may be correct that a finding that other suppliers or purchasers exist in the market should not end Commerce's reliance analysis (and Commerce's analysis on remand did not stop with that finding), Commerce appropriately weighed this fact amongst various other factors.

Second, Ventura contests Commerce's conclusion that a contractual relationship, even an exclusive one, standing alone, is not sufficient to demonstrate reliance.  Ventura Comments at 8. Ventura argues  that "{a}s a logical matter, reliance and control certainly could be established by contractual terms."  *Id.*  However, a mere possibility that parties could potentially structure their contract in the manner suggested by Ventura does not undermine Commerce's remand results, which examined the actual contract between LDC and its supplier.  Commerce concluded "that there is not sufficient evidence to support that either party was in a position to dictate or unduly influence the terms of the contractual Agreement or exert control over the other party, such that there would be any indication that the terms of the Agreement are not the product of market-based negotiations between independent parties."  Remand Results at 17.

Commerce explained in the Remand Results that the record contains no evidence that either party was in a position to exert undue influence over the other during the negotiation of pricing terms such that it would be reasonable to conclude that the relationship could have an impact on the negotiated pricing terms.  Remand Results at 18.  This is consistent with the

Court's analysis and the regulation. *See* Remand Order at 27-28; 19 C.F.R. § 351.102(b)(3) (affiliation under Section 1677(33) may be established if the record indicates that "the relationship has the potential to impact decisions concerning the product, pricing or costs of such merchandise)). Ventura contends that there is no legal support for Commerce's evaluating whether there are aspects of the relationship between the parties that would create undue influence or create an impact on price. Ventura Comments at 11. As explained above, the Court expressly noted that such potential for impacts on price is a basis for Commerce's affiliation analysis. *See* Remand Order at 27-28. Commerce appropriately considered whether the parties' relationship had the potential to exert an impact on the negotiated pricing terms consistent with Congressional intent as identified by this Court. *Id.* (citing 19 U.S.C. § 1677b(f)(3); SAA at 4174-75).

  In prior cases recognized by this Court, Commerce has found that even exclusive sales contracts between parties is insufficient for an affiliation finding. *See e.g.*, *Hontex Enterprises, Inc. v. United States*, 342 F. Supp. 2d 1225 (Ct. Int'l Trade 2004) (*Hontex*) (citing *Certain Cold–Rolled and Corrosion–Resistant Carbon Steel Flat Products from Korea*, 62 Fed. Reg. 18,404, 18,441 (Apr. 15, 1997) ("The arrangements {respondent} has entered into with its home-market distributors are simply exclusive sales contracts which are a common commercial arrangement all over the world. These arrangements are typically made at arm's length and do not normally indicate control of one party over the other.")). Ventura argues that *TIJID*[2] and *Hontex* do not support Commerce's conclusion that exclusive contracting, by itself, does not establish reliance. Ventura Comments at 8-11 (citing *TIJID vs. United States*, 366 F.Supp.2d 1286, 1295-1300 (Ct.

---

[2] The Court in *TIJID* held that even if a supplier sells 100 percent of its exports to a single distributor, that fact alone does not establish a finding of a close supplier relationship. *TIJID v. United States*, 366 F. Supp. 2d at 1295-1300.

Int'l Trade 2005); *Hontex* 342 F.Supp.2d 1225 (Ct. Int'l Trade 2004)). Ventura further argues that the facts of those cases are distinguishable from the current facts, but Ventura does not rebut the general principle articulated in those cases, that even an exclusive contract is not dispositive to establish reliance, which is the legal conclusion made by Commerce. Remand Results at 18; *see also TIJID*, 366 F.Supp.2d at 1298-99; *Hontex*, 342 F.Supp.2d at 1235-37. Commerce evaluated the nature of the relationship among multiple other factors, and any argument that Commerce should end its inquiry after only finding an exclusive contractual agreement is not supported by case law. Remand Results at 18-25.

Ventura further argues that the nature of the contractual agreement in this case demonstrates a material factual distinction with the above cited cases. Specifically, Ventura argues that the supplier [                                                                    ] pursuant to the agreement. Ventura Comments at 11. However, the nature of a contract always creates contractual terms that parties are contractually obligated to carry out. As Commerce reasoned, "{s}imply because Company Y has agreed to fixed sales terms with Company X does not establish in and of itself that Company Y is now in some way affiliated with Company X because it now has contractual obligations that it freely entered into." Remand Results at 21.

Ventura next raises arguments that Commerce should have evaluated the parties' contacts over time and that Commerce did not meaningfully address the temporal aspect of the nature of the parties [            ] relationship. Ventura Comments at 11, 13-14. Commerce, however, did expressly review the temporal nature of the relationship, concluding that both the regulation and precedent focus on situations where temporary circumstances detract from a finding of affiliation. Remand Results at 22-23; 19 C.F.R. § 351.102(b)(3). Accordingly, Commerce reasonably concluded that this one factor was not dispositive, and that when weighing all factors

it was reasonable to continue to not find a close supplier relationship, such that either company is in control of the other within the meaning of the statute.  Remand Results at 16.

Commerce also noted that like a contractual agreement, the agreement contained provisions indicating the independence of the parties.  Specifically, [

].  Remand Results at 6-8 (citing LDC's DQR at Exhibit D3).  Ventura argues that such provisions were not ultimately exercised and that their existence is not mutually exclusive to finding a closer supplier relationship.  Ventura Comments at 13.  Commerce, however, did not find that such provisions were dispositive in finding no close supplier relationship, but rather the fact that the contract provided for the parties to make independently beneficial decisions weighed in favor of finding that the parties retained independence and were not reliant on the other, especially since both parties had other options to contract in the Brazilian market.  Remand Results at 8.  Further to this point, Ventura's claims about such independence being merely illusory are not supported by the record.  Specifically, Ventura argues that [

].  Ventura Comments at 13.  However, [

] such that the parties were not independent in contracting for market terms, and Commerce properly noted that either party could enter a contract with any other available Brazilian suppliers or purchasers.  Remand Results at 8 (citing LDC's DQR at Exhibit D3).

Ventura next faults Commerce's finding of distinction between the current case and *OCTG from Korea*.  Ventura Comments at 14-16 (citing *Certain Oil Country Tubular Goods from the Republic of Korea: Final Determination of Sales at Less Than Fair Value and Negative Final Determination of Critical Circumstances*, 79 Fed. Reg. 41,983 (July 18, 2014) (*OCTG*

10

*from Korea*)).  In *OCTG from Korea*, a case evaluating reliance between a purchaser and supplier, the supplier was involved in the sales process of the purchaser, the supplier had taken charge of the purchaser's overseas public relations campaign and provided employees to oversee research, marketing assistance, and management consulting.  Remand Results at 20.  Commerce found that this level of integration between the supplier and purchaser is not present here in the relationship between LDC and its supplier.  Ventura continues to argue that the terms of the agreement indicate reliance, but the fact that parties independently contracted and agreed to certain terms does not itself establish reliance because they assented to be bound by such terms. This is especially true where there is no indication that the parties were required to enter into a contract with each other or that there was any potential relationship dynamic that would result in a potential pricing impact in those negotiated terms.

Ventura next argues that Commerce applied certain unlawful tests in its analysis. Ventura Comments at 16-17.  Each argument raised by Ventura, however, is not a brightline "test" that Commerce applied, but are relevant facts that Commerce considered and weighed in applying the statutory standard of determining whether either party was in a position to exercise restraint or direction over the other.  Ventura's summary of one factor that Commerce cited as being dispositive of independence and lack of reliance misapprehends Commerce's findings premised on an analysis of all relevant factors contained in the record.  Ventura Comments at 17.

For example, Ventura challenges Commerce's finding that the fact that the parties [

                    ] weighs against a finding that the parties are affiliated by stating,

"Commerce also assets (*sic*) that "[                    ] seemingly indicates that the parties

are operating independently, at arms-length, and willing to [

].” . . . .  Commerce appears to be stating that a close supplier relationship *cannot*

*ever* [                              ].”  Ventura Comments at 17 (emphasis added).  This is a straw man

argument.  Commerce did not find that a close supplier relationship *cannot ever* involve

[           ], rather Commerce weighed this fact in its overall analysis of whether LDC and its

supplier retained independence and were not reliant on each other.  Remand Results at 22.

Finally, Ventura repeats its arguments that the results of the major input rule applied in

the preliminary determination should weigh in favor of a finding of affiliation.  Ventura

Comments at 18.  However, Commerce explained that the price paid by LDC for lemons to its

suppliers is not determinative in Commerce's affiliation analysis and that the major input rule is

only applied *after* a finding of affiliation.  Remand Results at 23-25.

Consistent with the remand order, Commerce evaluated the specific terms and nature of

the contractual agreement between the parties and the existence of multiple purchasers and

suppliers of lemons in the Brazilian market when considering whether LDC was reliant on its

supplier and whether the supplier was reliant on LDC when finding no affiliation under 19

U.S.C. § 1677(33)(G).  Accordingly, its determination is consistent with the remand order,

supported by substantial evidence, and in accordance with law.

### B.  Commerce's Determination That The Companies Are Not Partners Is Supported By Substantial Evidence And In Accordance With Law

Commerce's remand redetermination that continues to find that LDC and its supplier are

not affiliated as partners within the meaning of 19 U.S.C. § 1677(33)(C), is supported by

substantial evidence and in accordance with law.  Commerce complied with the remand order by

considering whether LDC and Supplier A formed a cooperative business endeavor in which they

shared risk and reward when determining whether LDC and its supplier were partners within the

meaning of 19 U.S.C. § 1677(33)(C).  Remand Order at 29.  Commerce found that the parties

had not formed a cooperative business endeavor and that the contractual agreements did not

create shared risk and reward. Remand Results at 25-29. Commerce explained that there is no

indication that the parties held themselves out externally to be in a cooperative endeavor, that

either party has the ability to act on behalf of the other or the alleged partnership, that either

party has obligations beyond the terms of the contract, and there was no joint ownership of

property. Remand Results at 27. Commerce found that all these factors weigh in favor of

concluding there is merely a contractual arrangement and not a cooperative business endeavor.

Remand Results at 27. Further, Commerce found that the contractual terms did not establish

shared risk or reward both outside or within the terms of the Agreement. Remand Results at 11-

16.

        Ventura first argues that Commerce did not adequately weigh the fact that LDC used the

term "partnership" to describe its relationship with its supplier. Ventura Comments at 19.

However, Commerce reasonably concluded that this fact was not dispositive in determining

whether the parties had formed a cooperative business endeavor/partnership for purposes of the

statute. Remand Results at 26. Commerce weighed this fact against the absence of record

evidence that the parties hold themselves publicly as in association, have the power to act on

behalf of the other or the alleged partnership, or that the parties jointly own anything. *Id.*

        Ventura next incorrectly asserts that Commerce's evaluation and weighing of record

evidence established dispositive requirements. Ventura Comments at 20. In considering record

evidence, Commerce weighed multiple factors—including whether LDC and its supplier held

themselves out publicly as in association, had the power to act on behalf of the other or the

alleged partnership, or that the parties jointly own anything—in determining whether LDC and

its supplier had formed a cooperative business endeavor or merely entered into a contractual agreement. Remand Results at 26-27. No single fact was identified as dispositive.

Ventura contends that there is shared risk and reward within the terms of the agreement and that such risk and reward is sufficient to establish the existence of a partnership. Ventura Comments at 21. Ventura does not dispute that there are no shared risks or rewards between the parties outside the terms of the contractual agreement, and Commerce found no shared risk or reward even within the terms of the agreement. Remand Results at 11-15 ("The parties do not share risk or reward within the framework of the Agreement."). Commerce explained that the potential impact of certain risks and rewards within the agreement results in opposing impacts on the individual parties. Remand Results at 12. Ventura does not address these points made by Commerce about opposing impacts or the lack of shared risk or reward within the framework of the agreement. Commerce also reiterated its reluctance to conclude that contractual terms necessarily create *shared* risk or reward. Commerce recognized that there may be interests by one party in the fulfillment of contractual terms by the other party, but that such interests do not constitute *shared* risk or reward and that there is [

] if they conclude that one party has failed to fulfil its contractual obligations. Remand Results at 28.

Finally, Ventura contests Commerce's weighing of certain factual information in evaluating whether the parties had entered into a cooperative business endeavor and whether there was shared risk or reward. Ventura Comments at 21-22. Commerce fully weighed all record information to conclude that the parties were not affiliated under 19 U.S.C. § 1677(33)(C). Remand Results at 28-29. The same weighing of evidence was employed by Commerce when finding that LDC and its supplier were in a contractual relationship between

two independent parties and not partners that have entered into a cooperative business endeavor sharing risk and reward.  Remand Results at 28-29; *see also Usinor v. United States*, 342 F. Supp. 2d 1267, 1272 (Ct. Int'l Trade 2004) (The court may not "reweigh the evidence or substitute its own judgment for that of the agency.").  Accordingly, this Court should sustain Commerce's determination as supported by substantial evidence and in accordance with law.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter judgment for the United States.

Respectfully submitted,

YAAKOV M. ROTH
 Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Tara K Hogan
TARA K. HOGAN
Assistant Director

/s/ Anne M. Delmare
OF COUNSEL:                          Anne M. Delmare
JonZachary Forbes                    Trial Attorney
Senior Attorney                      U.S. Department of Justice
Office of the Chief Counsel          Civil Division
for Trade Enforcement and Compliance Commercial Litigation Branch
U.S. Department of Commerce          P.O. Box 480
Washington, D.C.                     Ben Franklin Station
                                     Washington, D.C. 20044
                                     E-mail: Anne.M.Delmare@usdoj.gov

May 2, 2025                          Attorneys for Defendant

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify under penalty of perjury that on this 2nd day of May, 2025, a copy of the foregoing "Defendant's Reply To Comments On Remand Redetermination" was filed electronically.

X  This filing was served electronically on all parties by operation of the Court's electronic filing system.

<u>/s/ Anne M. Delmare</u>
ANNE M. DELMARE