UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| VENTURA COASTAL, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>      Defendant,<br><br>and<br><br>LOUIS DREYFUS COMPANY SUCOS S.A.,<br><br>      Defendant-Intervenor. | Court No. 23-00009<br><br>**NON-CONFIDENTIAL VERSION**<br><br>Business Proprietary Information in the Table of Contents and on pages 1-3 and 5-12 has been deleted. |

**DEFENDANT-INTERVENOR'S REPLY COMMENTS IN SUPPORT OF THE FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

Gregory J. Spak
Jessica E. Lynd

White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

*Counsel for Louis Dreyfus Company Sucos S.A.*

May 2, 2025

## TABLE OF CONTENTS

Page No.

I. INTRODUCTION ..................................................................................................................1

II. COMMERCE PROPERLY DETERMINED THAT LDC SUCOS AND [     ] DO NOT HAVE A CLOSE SUPPLIER RELATIONSHIP UNDER 19 U.S.C. § 1677(33)(G) ........................................................................................................................2

III. COMMERCE PROPERLY DETERMINED THAT LDC SUCOS AND [     ] ARE NOT PARTNERS UNDER 19 U.S.C. § 1677(33)(C) ......................................................10

IV. CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Coal. of Am. Millwork Producers v. United States,*
   581 F. Supp. 3d 1295 (Ct. Int'l Trade 2022) ...........................................................................5

*Loper Bright Enterprises v. Raimondo,*
   144 S. Ct. 2244 (2024) ...........................................................................................................13

*TIJID, Inc. v. United States,*
   366 F. Supp. 2d 1286 (Ct. Int'l Trade 2005) ...........................................................................5

*Ventura Coastal, LLC v. United States,*
   Slip Op. 24-125, Consol. Court No. 23-00009 (Ct. Int'l Trade 2024) ........................... passim

### STATUTES AND REGULATIONS

19 U.S.C. § 1677(33)(C) ....................................................................................................2, 10, 12

19 U.S.C. § 1677(33)(G) ..........................................................................................................1-3, 5, 9

19 C.F.R. § 351.102(b)(3) ............................................................................................................3, 5

### ADMINISTRATIVE DETERMINATIONS

*Certain Lemon Juice From Brazil: Final Affirmative Determination of Sales at Less Than Fair Value,*
   87 Fed. Reg. 78,939 (Dep't Commerce Dec. 23, 2022) ................................................. passim

*Chlorinated Isocyanurates from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2017-2018,*
   85 Fed. Reg. 10,411 (Dep't Commerce Feb. 24, 2020) ........................................................ 4-6

*Final Results of the Administrative Review of the Antidumping Duty Order on Glycine from Japan; 2022-2023,*
   89 Fed. Reg. 101,553 (Dep't Commerce Dec. 16, 2024) ........................................................4

### MISCELLANEOUS

Statement of Administration Action for the Uruguay Round Agreements Act,
   H.R. Rep. No. 103-316 (1994), as reprinted in 1994 U.S.C.C.A.N. 4040................................3

In accordance with this Court's decision and remand order in *Ventura Coastal, LLC v. United States*, Slip Op. 24-125, Consol. Court No. 23-00009 (Ct. Int'l Trade 2024) ("Remand Order") (ECF Nos. 84, 89), Louis Dreyfus Company Sucos S.A. ("LDC Sucos") hereby submits reply comments on the *Final Results of Redetermination Pursuant to Court Remand*, Feb. 14, 2025 ("Final Redetermination") (ECF Nos. 92, 93) issued by the Department of Commerce ("Commerce"), and responds to the comments submitted by Plaintiff Ventura Coastal, LLC ("Plaintiff Comments") (ECF Nos. 99, 101).

The administrative determination under review by the Court is Commerce's Final Determination in *Certain Lemon Juice From Brazil: Final Affirmative Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 78,939 (Dep't Commerce Dec. 23, 2022), and accompanying Issues and Decision Memorandum ("Final Determination") (PR 294, 301).[1]

## I. INTRODUCTION

In its Final Redetermination, Commerce reconsidered record evidence according to the Court's guidance, and properly found that LDC Sucos and [      ] are not affiliated. First, Commerce followed the Court's instructions to reconsider whether LDC Sucos controlled [     ] through [     ] reliance on LDC Sucos such that the parties had a close supplier relationship under 19 U.S.C. § 1677(33)(G). Remand Order at 21. Commerce determined that [    ] was not reliant on LDC Sucos because the parties are autonomous, they can [                                     ], and LDC Sucos does not wield any control over [    ] production, pricing, or costs. Plaintiff's arguments to the contrary are unavailing. Second, Commerce applied the Court's definition of "partners"

---

[1] We assign the prefix "PR" (for "public record") to public documents on the administrative record and assign the prefix "CR" (for "confidential record") to confidential documents on the administrative record, followed by the reference number for the document.

1

("members of a cooperative endeavor sharing in risk and reward") and continued to find that LDC Sucos and [    ] are not partners under 19 U.S.C. § 1677(33)(C) because there is no evidence of a cooperative business endeavor between the parties beyond the contractual obligations arising under the supply Agreement. Plaintiff's definition of "partners" is overly broad, and the Court should defer to Commerce's "reasoned decisionmaking" in applying the Court's definition under the regulations.

Commerce followed the Court's instructions and reconsidered its affiliation determination according to the record evidence and the Court's guidance. Its determination on remand that LDC Sucos and [    ] are not affiliated under 19 U.S.C. § 1677(33)(G) and 19 U.S.C. § 1677(33)(C) is supported by substantial evidence and is in accordance with the law.

## II.   COMMERCE PROPERLY DETERMINED THAT LDC SUCOS AND [    ] DO NOT HAVE A CLOSE SUPPLIER RELATIONSHIP UNDER 19 U.S.C. § 1677(33)(G)

In the Final Determination in the underlying investigation, Commerce correctly concluded that LDC Sucos and [    ] did not have a close supplier relationship under 19 U.S.C. § 1677(33)(G) because (1) LDC Sucos had other sources for purchasing or growing lemons; (2) the Agreement between LDC Sucos and [    ] recognized the sovereignty of the parties and did not create any obligations beyond the terms of the contract; and (3) the cost and sales verifications did not show any evidence of affiliation or non-arm's-length transactions. Final Determination at 12-13.

In its Remand Order, the Court considered whether Commerce failed to address whether an affiliation between LDC Sucos and [    ] existed through a close supplier relationship under 19 U.S.C. § 1677(33)(G), which arises where "the supplier or buyer becomes reliant upon the other" and if there exists "control" such that "the relationship has the potential to impact decisions concerning the product, pricing or costs" of such merchandise. Remand Order at 17-18 (citing

2

Statement of Administration Action for the Uruguay Round Agreements Act, H.R. Rep. No. 103-316 (1994), as reprinted in 1994 U.S.C.C.A.N. 4040, 4174-75; 19 C.F.R. § 351.102(b)(3)). The Court determined that "Commerce failed to consider whether LDC has the ability to control Supplier A, and, consequently, whether Supplier A is reliant upon LDC," and that, while Commerce "discusses the potential reliance of LDC on Supplier A, it fails to consider or acknowledge the supplier's reliance on LDC." Remand Order at 19. For this reason, the Court remanded to Commerce to "consider whether LDC controlled its supplier through Supplier A's reliance on LDC." Remand Order at 21.

In response to the Court's remand instructions, Commerce further considered the record evidence and the Court's reasoning and found that [    ] is not reliant on LDC Sucos, and therefore continued to find that LDC Sucos and [    ] are not affiliated pursuant to 19 U.S.C. § 1677(33)(G). Specifically, in order to determine whether [    ] is reliant on LDC Sucos – which requires that "the relationship has the potential to affect decisions concerning the production, pricing, or cost of the subject merchandise," *see* Final Redetermination at 5 – Commerce considered whether LDC Sucos and [    ] shared ownership or management; whether [    ] had the ability to "act{} independently," including whether it had the option of terminating the Agreement or selling the land; whether there were other lemon juice producers in Brazil with whom [    ] could contract; and whether the specific terms of the contract suggested any control over production, pricing, or cost. Final Redetermination at 5-9. Based on Commerce's thorough review of the record evidence in accord with the Court's instructions, it properly determined that [    ] was not reliant on LDC Sucos.

First, Commerce noted that "LDC and Supplier A share no common ownership or any ownership over one another, nor is there any record evidence indicating the parties share

3

management or staff." Final Redetermination at 5. Plaintiff does not dispute this point but argues that Commerce went beyond the plain meaning of the statute when it considered shared ownership or management as "relevant to analyze" in determining whether the companies were reliant on the other or in a position to exert control over the other. Plaintiff Comments at 12-13.

Plaintiff misses the point. As Commerce noted in the Final Redetermination, shared ownership or management *is not* a requirement to demonstrate reliance and/or control; rather, Commerce reasonably considered this factor as relevant to the question of "whether either party is reliant on the other or in a position to exert control over the other." Final Redetermination at 19. Plaintiff does not cite any legal authority to suggest that Commerce is barred from considering shared ownership or management in its analysis. To the contrary, it is reasonable that shared ownership or management would be relevant to discern control, as directed by the statute (which states that "a person shall be considered to control another person if the person is legally or ***operationally in a position*** to exercise restraint or direction over the other person," 19 U.S.C. § 1677(4)(B) (emphasis added)). Indeed, as Commerce notes, it has previously considered shared ownership/management as potentially indicative of control. Final Redetermination at 19 (citing *Final Results of the Administrative Review of the Antidumping Duty Order on Glycine from Japan; 2022-2023*, 89 Fed. Reg. 101,553 (Dep't Commerce Dec. 16, 2024), accompanying Issues and Decision Memorandum).

Second, Commerce differentiates between "exclusivity" and "reliance," explaining that an exclusive supply contract (such as the one at issue in this case) does not indicate reliance in cases where a party is "capable of acting independently if the exclusive relationship is no longer in its interests." Final Redetermination at 6 (citing *Chlorinated Isocyanurates from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2017-2018*,

4

85 Fed. Reg. 10,411 (Dep't Commerce Feb. 24, 2020), accompanying Issues and Decision Memorandum). Commerce reviews the terms of the Agreement in detail, which makes clear that [                                                                                     ]. Final Redetermination at 6-9.

In its comments, Plaintiff focuses on the requirement under the contract that, of any groves that [    ] owns, for this specific one, [

], which it argues is indicative of reliance. In its attempt to argue that, in this case, alleged exclusivity equals reliance, Plaintiff attempts to distinguish the Court's decision in *TIJID, Inc. v. United States*, 366 F. Supp. 2d 1286 (Ct. Int'l Trade 2005) (which Commerce invokes for the proposition that, "even if a supplier sells 100 percent of its exports to a single distributor, that fact alone does not establish a finding of a close supplier relationship"). Plaintiff argues that, unlike in *TIJID*, under the agreement between LDC and [     ] "it is obligatory (rather than optional) for [


]." Plaintiff Comments at 10. However, even if there exists an exclusive supply contract for this parcel of land, Commerce will only consider the parties as affiliates if the parties are "legally or operationally in a position to exercise restraint or direction over the third party" and if "the relationship has the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise." *Coal. of Am. Millwork Producers v. United States*, 581 F. Supp. 3d 1295, 1311 (Ct. Int'l Trade 2022) (citing 19 U.S.C. § 1677(33)(G); 19 C.F.R. § 351.102(b)(3)). The record evidence, as reexamined by Commerce on remand, demonstrates that is not the case here.

Plaintiff does not acknowledge, much less distinguish, Commerce's determination in *Chlorinated ISOS from China*, cited in the Final Redetermination, which plainly states that "{a} party might have an exclusive relationship with a supplier, customer, or reseller, but still be

5

perfectly capable of acting independently if the exclusive relationship is no longer in its interests. What matters is whether the first party ultimately has other options and thus is not by necessity in the exclusive relationship with the second party." Final Redetermination at 6 (citing *Chlorinated ISOS from China*).

Plaintiff acknowledges record evidence demonstrating that LDC Sucos has other sources of lemons (noting that Commerce "continues to rely heavily on the fact that there are other lemon suppliers in Brazil"), and mischaracterizes Commerce's approach, stating "the existence of potential other sources is a part of the analysis, it is not – as Commerce appears to believe – the entirety of the close supplier test." Plaintiff Comments at 8.

In fact, Commerce considered other factors, including shared ownership and management, and the extent to which the actual Agreement establishes control of one party of the other with respect to production, pricing, or cost. Further, Plaintiff's statement that the arrangement "has created a situation where [    ] has become reliant on LDC's purchases of lemons" is conclusory, and ignores the fact that [

]. It is important to note that this issue pertains to a single piece of land, and there is insufficient evidence on the record to understand how the LDC relationship factors into [    ] larger business. It would be inappropriate for Commerce to require such information, which is not at LDC Sucos' disposal or on the record, since [    ] was not a party to the investigation. Thus, Plaintiff's test with respect to [    ] supposed reliance on LDC Sucos is too broad and far-reaching to be practicable. Plaintiff's conclusion that [    ] is reliant on LDC Sucos is based on assumptions, unsupported by record evidence.

As part of this distinction between "exclusivity" and "reliance," Commerce notes that

6

[     ] "[                                              ], for any reason, or [

              ] of the Agreement."  Final Redetermination at 6.  Plaintiff mischaracterizes

Commerce's position, claiming that Commerce creates a "[

                  ] in order to find a close supplier relationship."  Plaintiff Comments at 12.

In fact, Commerce considered [                              ] the Agreement as one of many factors

in its "reliance" analysis.  For example, Commerce considered the existence of other lemon juice

producers in Brazil with which [     ] could contract; the specific terms of the Agreement and the

potential arising thereunder to affect decisions concerning the production, pricing, or cost; and the

lack of shared ownership/management – and, as a result of these factors, that "there is no record

evidence that either LDC or Supplier A dictated sales terms to, or otherwise had the ability to

control the other company."  Final Redetermination at 9.

Plaintiff notes that LDC Sucos and [     ] have never exercised [

    ] and argues that the "repeated business transactions and [                    ]" indicate

reliance.  Plaintiff Comments at 13-14.  This new test for reliance proposed by Plaintiff – that

parties' decision *not* to utilize a [                ] suggests reliance – is preposterous.  There are

manifold commercial reasons why independent parties may elect to continue working together

under the auspices of a supply contract.  As Commerce rightly points out, the existence of the

[              ] simply means that the parties could [                              ], for

any reason, and does not suggest affiliation.  Final Redetermination at 6.  Further, the [

                ] and LDC Sucos demonstrates that [     ] is indeed capable and willing

to defend its rights under the contract.  *See* Final Redetermination at 22.

Plaintiff argues that Commerce failed to offer a "meaningful analysis" of its determination

that "a [              ] is one that can be easily replaced."  Plaintiff Comments at 17-18.

7

As noted in LDC Sucos' response brief, Commerce *did* consider the temporal nature of the Agreement in the underlying investigation in its analysis when it analyzed the terms of the contract, which includes the length. On remand, Commerce again grappled with Plaintiff's arguments regarding longevity, distinguishing the cases presented by Plaintiff ostensibly in support of its argument, citing to the relevant regulations, and ultimately concluding that the [     ] temporal nature of the Agreement did not override the other record evidence with respect to the key question: whether there existed reliance or control by one party over another. Final Redetermination at 22-23.

Plaintiff repeats its flawed argument that "the relationship between the parties is [


], " that the relationship is akin to "a [                    ]," and is therefore one of "mutual reliance." Plaintiff Comments at 10. However, as previously pointed out, LDC Sucos *owns land in Brazil*, and also has similar lease agreements with other third parties. *See, e.g.*, LDC Sucos' Supp. Sec. D Resp. at Supp. D-10 (noting that LDC Sucos' affiliate, Louis Dreyfus Company Agrícola S.A., owns land, including a lemon grove, in Brazil) (CR 159; PR 155). LDC Sucos could and does contract with other companies, and is not reliant on [    ]. Commerce successfully distinguishes its determination in *OCTG from Korea*, which was wielded by Plaintiff in support of its argument that LDC Sucos and [    ] are affiliated under Section 771(33)(G) of the Act based on their close supplier relationship. Commerce quotes from its Issues and Decision Memorandum in that case to demonstrate the deep operational integration between POSCO and NEXTEEL – including the exchange of employees or the involvement in the other's inventory monitoring, shipping of finished products, marketing, research and development, or management – which enabled POSCO to "exercise restraint or control over NEXTEEL." *See* Final

8

Redetermination at 19-20.

Plaintiff argues that the facts in this case are similar to those in *OCTG from Korea*, in which: (1) POSCO assigned employees to monitor NEXTEEL's inventory to ensure that NEXTEEL was supplied with POSCO's steel; (2) POSCO employees oversee "the shipping of finished products" from NEXTEEL's plant; (3) POSCO provided NEXTEEL with marketing/research and development support; (4) NEXTEEL relied on POSCO for "sales operations and certain other production operations," and (5) POSCO was in a position to control NEXTEEL in a manner that affected pricing, production, and sales. Plaintiff Comments at 14-15. Plaintiff wrongly conflates a partnership (with shared risk and reward) with a supply contract involving a [         ].

*Plaintiff itself* characterizes the LDC Sucos-[    ] relationship as akin to "a [

            ]," and proceeds to overstate other elements of the arrangement. Plaintiff Comments at 10. For example, that LDC Sucos is aware of [     ] inventory is not equivalent to POSCO assigning employees to monitor NEXTEEL's inventory; LDC Sucos' use of [

   ] is not "even greater" than POSCO's marketing/R&D support of NEXTEEL; Plaintiff argues that "[        ] sold lemons to LDC during the period of investigation," but that is not equivalent to NEXTEEL's dependance on POSCO for its "sales operations and certain other production operations." The facts are distinct.

As demonstrated above, Commerce followed the Court's remand instructions to consider whether LDC Sucos controlled [     ] through [     ] reliance on LDC Sucos. Based on its review and analysis of the record evidence, Commerce properly determined that [     ] was not reliant on LDC Sucos, and therefore that LDC Sucos and [     ] did not have a close supplier relationship under 19 U.S.C. § 1677(33)(G).

9

### III. COMMERCE PROPERLY DETERMINED THAT LDC SUCOS AND [    ] ARE NOT PARTNERS UNDER 19 U.S.C. § 1677(33)(C)

The Court considered whether Commerce properly defined and applied the term "partners" – which the Court defines as "members of a cooperative endeavor sharing in risk and reward" – in finding that LDC Sucos and [    ] were not affiliated under 19 U.S.C. § 1677(33)(C). Remand Order at 27. The Court determined that Commerce's interpretation of "partners" was "inadequate," and remanded for Commerce "to apply the definition articulated by the Court, namely whether LDC and Supplier A formed a cooperative business endeavor in which they shared risk and reward." Remand Order at 29.

On remand, Commerce further considered record evidence in light of the Court's definition of "partners," and continued to find that LDC Sucos and [    ] are not affiliated under 19 U.S.C. § 1677(33)(C). First, Commerce determined that "record evidence does not support the conclusion that LDC and Supplier A are in a 'cooperative business endeavor,' such as an association, joint venture, or unincorporated organization." Final Redetermination at 11.

On this point, Plaintiff continues to harp on the [                                                                  ], stating that it is "[                    ]." Plaintiff Comments at 19. Plaintiff claims that Commerce "fail{ed} to provide a reasoned analysis as to this issue." *Id*. However, Commerce did analyze this issue; Plaintiff just disagrees with Commerce's conclusion. Commerce stated that "{t}he fact that a party refers to a particular relationship as a 'partnership' is one of several pieces of information that can inform our determination," but contextualized this fact in its holistic consideration of:

> {W}hether record evidence supports the claim that the relationship is a "partnership," and whether the record evidence supports the determination that the relationship between LDC and Supplier A qualifies as a "partnership" according to the statute, and here, the definition articulated by the Court in the Remand Order— namely, whether LDC and Supplier A are "partners" such that they more generally form a cooperative endeavor in which they share risk and reward.

10

Final Redetermination at 26.

Second, Commerce determined that "there is not sufficient record evidence that LDC and Supplier A have shared risk or reward within the terms of the Agreement, such that the success or failure of one party would be transferred to the other party." Final Redetermination at 11. Commerce also found that "there is no shared risk or reward *at all* between the two parties beyond the terms of the Agreement." Final Redetermination at 27-28 (emphasis original).

In response, Plaintiff argues that a partnership does not require that LDC Sucos and [    ] have any interest in each other's performance outside the bounds of the Agreement. Plaintiff Comments at 21. It is noteworthy that Plaintiff does not primarily argue that the terms of the Agreement or their relationship extended beyond the Agreement; rather, they argue that Commerce applies the wrong standard. However, as Commerce explained, the parties' cooperation within the bounds of the contract – to which they both assented, and can [

] – only suggests the existence of a contractual relationship, not a partnership. *See* Final Redetermination at 11 (finding that "the Agreement between the parties is merely a contractual relationship not indicating any further 'cooperative' aspect of the parties relationship beyond the terms of the contract agreed to by the otherwise independent parties … mere assent to terms in a contractual agreement [                              ] to be insufficient to establish a cooperative business endeavor"). Plaintiff's conclusory definition of "cooperative endeavor in which {the parties} share risk and reward" simply amounts to a description of the parties' supply contract: "[

]. This is a cooperative endeavor." Plaintiff Comments at 20. In fact, this is a *contract*, with clear boundaries and obligations, and one which [                                                    ]. If

11

Commerce interprets all supply contracts in which the parties mutually benefit as forming the basis of a partnership under 19 U.S.C. § 1677(33)(C), then the statute is rendered meaningless.

Plaintiff also argues that, contrary to Commerce's assertions, public announcement and joint ownership are not requirements for a partnership. Plaintiff Comments at 20. Plaintiff misunderstands Commerce's approach, despite the clear explanation contained in the Final Redetermination. As Commerce stated, it is "*not establishing as a requirement* that in all cases parties hold themselves out publicly as an association, or have power to act on behalf of the other or the alleged partnership, or that the parties jointly own anything." Final Redetermination at 26 (emphasis added). Rather, Commerce considered these factors "relevant in evaluating whether a partnership exists." *Id*. There is nothing in the statute or regulations that prohibits Commerce from undertaking a holistic analysis of such factors, which have an obvious bearing on whether the parties "engaged in a cooperative business endeavor in which they shared risk and reward."

Finally, Plaintiff argues that the [                                                            ] does not mean they were not partners; rather, "partnership agreements have clearly defined obligations that can be enforced legally." Plaintiff Comments at 22. As discussed above, the [

              ]. In addition, the fact of the LDC Sucos-[              ] suggests the exact opposite conclusion as that reached by Plaintiff: as Commerce stated, "[                   ] seemingly indicates that the parties are operating independently, at arms-length, and willing to [


              ]." Final Redetermination at 22. While partnership agreements may "have clearly defined obligations that can be enforced legally," so too do normal supplier contracts, as is the case here.

12

With respect to Commerce's definitions of "partner," "control," and other operative terms, Commerce should be afforded deference in this case because Congress expressly delegated to Commerce the authority to regulate which parties are affiliated within the antidumping context. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), allows space for "reasoned decisionmaking" by the agency – a threshold surpassed here in the Final Redetermination. *See generally* LDC Sucos' Supp. Br. (ECF Nos. 76, 77); LDC Sucos' Supp. Resp. Br. (ECF Nos. 82, 83). The overly broad definition of "partner" advocated by Plaintiff, however, is contrary to Congressional intent and should be rejected under the *Loper Bright* standard.

## IV. CONCLUSION

For the foregoing reasons, Defendant-Intervenor respectfully requests that the Court issue a decision consistent with the above discussion. The Court should affirm Commerce's Final Redetermination, which is supported by substantial evidence and in accordance with law.

Respectfully submitted,

/s/ Gregory J. Spak
Gregory J. Spak
Jessica E. Lynd

White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600
gspak@whitecase.com

*Counsel to Louis Dreyfus Company Sucos S.A.*

May 2, 2025

13

## CERTIFICATE OF COMPLIANCE

I hereby certify that Defendant-Intervenor's Reply Comments in Support of the Final Results of Redetermination Pursuant to Court Remand contains no more than 3,906 words (according to the word count feature of the Microsoft Word processing program) and therefore complies with the word count limitation set forth in Paragraph 2(B)(1)(b) of the Court's Standard Chambers Procedures.

/s/ Gregory J. Spak<br>Gregory J. Spak

Date: May 2, 2025